Submitted October 11, 2010, affirmed April 20, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JESSE JEROME PHILLIPS,
aka Jessy Jerome Phillips,
aka Jessey Jerome Phillips,
*Defendant-Appellant.*

Multnomah County Circuit Court
080431569; A140377

255 P3d 587

Rankin Johnson IV argued the cause and filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

■        Defendant appeals a judgment of conviction, after a jury verdict, of third- degree assault for intentionally causing injury to a person "[w]hile being aided by another person actually present." ORS 163.165(1)(e). He argues, first, that the court erred by instructing the jurors that they could convict him of third-degree assault for aiding or abetting a co-assailant who hit the victim. He also argues that, under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), the trial court erred in rejecting his request to instruct the jury that, because there were two ways under which he might be guilty—that is, as either the person who actually inflicted blows on the victim or as the "person actually present" who aided the assailant—at least 10 jurors had to agree on a single factual scenario. We conclude that defendant did not adequately alert the court of his objection to the aid-and-abet instruction that the court did give, and that not giving a *Boots* instruction was correct, because hitting the victim and actually facilitating the attack on the victim were merely alternative methods of meeting one of the elements of third-degree assault. We therefore affirm.[1]

The pertinent facts are as follows. Defendant and two co-assailants attacked two brothers, both of whom suffered significant injuries. This appeal challenges defendant's conviction for the attack on only the younger brother, to whom we refer as the victim. There was conflicting evidence at trial as to whether defendant himself punched the victim who was being held down by defendant's two co-assailants, or if defendant merely enabled the co-assailants' attack by holding the victim or by continuing to fight with the older brother and thereby preventing him from rendering aid to the victim.

Defendant was charged with third-degree assault, ORS 163.165(1)(e). That statute provides, in part:

"A person commits the crime of assault in the third degree if the person:

---

[1] Defendant also assigns error to the trial court's instruction to the jurors that they could find him guilty by a nonunanimious verdict. As we have held, that is not error. *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129 (2008), *rev den*, 345 Or 415, *cert den*, _____ US _____ , 130 S Ct 52 (2009).

"* * * * *

"(e)   While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

At trial, the state's primary theory was that defendant punched the victim, while the other two coassailants were aiding him and "actually present." However, in closing, the state argued that, even if the jury found that defendant did not actually hit the victim, he could still be found guilty of third-degree assault through aiding and abetting:

> "[I]f you find that the defendant maybe didn't cause the injury, he's still guilty because he's still aiding and abetting in causing that injury. How is he doing it? He's encouraging it, he's planning it, he's holding—he punches [the older brother], who is there to protect his brother, any number of ways. Aiding and abetting is a fairly broad thing, as well."

The jury was instructed on assault in the third degree and on aiding and abetting. For third-degree assault, the judge instructed the jury:

> "Oregon law provides that a person commits the crime of assault in the third degree if the person, while being aided by another person actually present, intentionally or knowingly causes physical injury to a person. In this case, to establish assault in the third degree the state must prove beyond a reasonable doubt the following four elements: one, the act occurred in Multnomah County, Oregon; two, the act occurred on or about February 28th, 2008; three, [defendant] intentionally or knowingly caused physical injury to [victim]; and, four, [defendant] was aided by another person actually present. If you find that [defendant] was not the principal and did not aid and abet, but was merely present at the scene, you must find him not guilty of [third-degree assault]."

As to aiding and abetting, the judge instructed the jury:

> "A person aids or abets another person in the commission of a crime if the person, one, is with the intent to promote or make easier the commission of the crime; two, encourages, procures, advises, or assists by act or advice, the planning or commission of the crime. 'Aided by another person actually present' means aided by a person who is close enough to be in a position to aid in exerting force upon

the victim. It includes a person who is at hand or within reach, sight, or call and who presents an added threat to the victim's safety. * * *

"A person who is involved in committing a crime may be charged and convicted of that crime if, with the intent to promote or facilitate commission of the crime, that person aids and abets someone in committing the crime or solicits or commands someone to commit the crime or attempts to aid or abet someone in committing the crime."

Before and after the jury instructions, defendant asked for a concurrence instruction on the third-degree assault charge—that is, citing *Boots*, he asked the court to tell the jurors that defendant could not be convicted unless 10 or more of them found that he personally hit the victim, or 10 or more of them found that he aided the assailant while actually present, or 10 or more of them found that he did both. The trial court denied the request. The jury found defendant guilty of third-degree assault and this appeal followed.

■ Defendant first argues that the trial court erred by instructing the jury that it could find him guilty of third-degree assault even if he acted only as an aider or abettor. The state responds that defendant did not preserve this assignment of error. We agree with the state.

In the preservation section of his brief on appeal, defendant directs us to the following argument made to the trial court:

"I would also be requesting a concurrence instruction on Count 2, which is assault in the third degree, the basis being, you know, *State v. Pine*[, 336 Or 194, 82 P3d 130 (2003)], which says you can't—if you're not the principal, then you can't be found guilty of assault in the third degree. It does appear to be an open question of whether or not one can aid and abet in assault III, and so I will also *move for a judgment of acquittal* on Count 2 on the theory that in *State v. Pine* they didn't intend that you be liable if you're not the principal.

"They also—I think, logically, it's not possible that you aid and abet. * * * [T]here are similar types of conduct, and if the statute really—it's only trying to go after people that actually cause physical injury. If you aid and abet, you don't cause—but not in a matter that caused physical injury

> then. Just like the defendant in *State v. Pine, you should be entitled to an acquittal."*

(Emphasis added.)

Defendant may be correct that he could not be convicted for third-degree assault by virtue of his role as the "other person actually present." *See State v. Merida-Medina,* 221 Or App 614, 619, 191 P3d 708 (2008), *rev den,* 345 Or 690 (2009) ("Because the aid of 'another person' is necessary for the crime to occur, * * * the 'other' person is not deemed to be an accomplice in the third-degree assault."). The state argues that *Merida-Medina* is distinguishable. Its argument is as follows: ORS 161.165(2) provides that a person cannot be liable for the criminal conduct of another if the other's crime "is so defined that the conduct of the person is *necessarily* incidental thereto." (Emphasis added.) In *Merida-Medina,* only two persons participated in the attack. Thus, the aid of the second person was "necessary for the crime to occur." In the present case, however, there were *three* assailants; thus, defendant's presence was not "necessarily incidental" to the assault—or at least it is not plain that it was.

However, we do not reach that question. Defendant did not take an exception to the trial court's jury instruction. Instead, he made a motion for judgment of acquittal, which the court denied. Under ORCP 59 H(1), that motion was inadequate. ORCP 59 H(1) provides:

> "A party may not obtain review on appeal of an asserted error by a trial court * * * in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury."

When excepting to the jury instructions, defendant made a clear objection and exception to the court's refusal to give a concurrence instruction—"I would also be requesting a concurrence instruction on Count 2[.]" He did not, however, do so with regard to the jury instruction on accomplice liability. Instead, he moved for a judgment of acquittal and did not take exception to the accomplice liability instruction. Therefore, defendant's assignment of error regarding the jury instruction on accomplice liability is not preserved, nor would

we reach it as plain error. *See State v. Guardipee*, 239 Or App 44, 47-48, 243 P3d 149 (2010) (describing effect of ORCP 59 H on plain error review).

Defendant next assigns error to the trial court's refusal to instruct the jury as required by *Boots*. As we explain below, we conclude that the trial court did not err in refusing to give that instruction.

■■    Article I, section 11, of the Oregon Constitution provides that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *; * * * in the circuit court ten members of the jury may render a verdict of guilty or not guilty[.]" *See also* ORS 136.450(1) (requiring the concurrence of at least 10 of 12 jurors in criminal matters). The jury concurrence requirement also requires that the requisite number of jurors agree on the factual occurrences that constitute a crime. *Boots*, 308 Or at 378-79. A court's failure to give a jury instruction requiring "agreement on all material elements of a charge in order to convict" is error. *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001).

In *Boots*, the defendant was charged with aggravated murder based on two different theories: that the defendant committed homicide in the course of committing robbery in the first degree, ORS 163.095(2)(d), or, alternatively, that the defendant committed the homicide to conceal the identity of the perpetrators of the robbery, under subsection (2)(e) of the same aggravated murder statute. *Boots*, 308 Or at 374. Each of those subsections, in addition to 15 more, specified a separate "aggravating factor" that elevated the crime of murder to aggravated murder. The trial court affirmatively instructed the jury that, in order to convict, it was not necessary for them to agree on which subsection of the aggravated murder statute the state had proved. The Supreme Court reversed, stating that, in order to convict, the requisite number of jurors[2] had to "agree on the *facts* required by either

---

[2] Because *Boots* was an aggravated murder case, conviction required a unanimous jury. In other cases, the *Boots* principle applies to the number of jurors required for conviction.

subsection." *Id.* at 377 (emphasis added). " 'The [jury] unanimity rule * * * requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.' " *Id.* at 380 (quoting *United States v. Gipson,* 553 F2d 453, 457-58 (5th Cir 1977)). The court distinguished between facts that require jury concurrence and those that do not:

> "We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to a crime."

*Id.* at 379.

■ Defendant argues that a concurrence instruction was necessary in this case to avoid the possibility that, for example, five jurors might have been convinced that defendant personally punched the victim but did *not* hold down the victim or his brother in order to facilitate somebody else's attack, while another five jurors might have been persuaded that defendant did *not* personally hit the victim, but *did* hold him down or prevent his brother from helping. In that case, defendant could be convicted of third-degree assault even though 10 jurors did not "agree on the facts required." *Id.* at 377.

Had *Boots* been the last word on the subject of the concurrence instruction, defendant's argument might prevail. However, in its first opportunity to elaborate on *Boots,* the Supreme Court took the opportunity to clarify it and, in the process, to limit its applicability. In *State v. King,* 316 Or 437, 441-42, 852 P2d 190 (1993), the court announced,

> "The basic rationale of *State v. Boots* is that each of the 17 special circumstances or 'aggravating factors' listed in ORS 163.095 is an element of *a separate and distinct crime.* * * *
>
> "Central to the *Boots* decision was a concern for the possibility that, at the close of trial, a jury could agree on guilt by agreeing that some one or another of a number of aggravating factors was proved without agreeing that any particular aggravating factor was proved. Logically, such failure to agree on an aggravating factor (a factor having been

defined by the court as an element of the offense) would result in a jury's failing to agree that a defendant had committed a *particular crime* of aggravated murder at all."

(Emphasis added; original emphases removed; citations omitted.) In *King*, the defendant was convicted of driving under the influence of intoxicants (DUII). He requested a concurrence instruction telling the jury that the requisite number of them had to agree that the state proved he was under the influence of intoxicants by demonstrating that his blood alcohol content exceeded .08, ORS 813.010(1)(a), or the requisite number had to agree that the state proved intoxication by demonstrating that he failed field sobriety tests and therefore was driving while visibly impaired, a violation of subsection (1)(b) of the same statute. *Id.* at 439. The Supreme Court held that a concurrence instruction was unnecessary because the two subsections of the DUII statute were merely different ways to commit the same crime:

> "We conclude that ORS 813.010(1)(a) and (b) describe a single offense, DUII. That offense has two elements. A conviction may result if a jury agrees beyond a reasonable doubt that the accused (1) drove a motor vehicle (2) while under the influence of intoxicants. A jury need not agree on which test results (a [blood alcohol] test or field sobriety tests or a combination thereof) established to their satisfaction that the driver was 'under the influence.' "

*Id.* at 446.

King, then, establishes that a concurrence instruction is necessary to avoid the possibility that a jury could return a guilty verdict even though the requisite number of jurors did not agree on which *crime*, if any, the defendant committed, but the instruction is not necessary to prevent a jury from deciding that the defendant is guilty even if the requisite number of jurors did not agree on what particular acts of the defendant constituted an element of a single crime. Thus, for example, a concurrence instruction was required in *Lotches*, 331 Or 455, because (as in *Boots*) the various theories of aggravated murder specified different crimes, while such an instruction was not required in *State v. White*, 115 Or App 104, 838 P2d 605 (1992), because the various acts that the defendant committed were all attempts to instill fear in

the victim and therefore alternative methods of accomplishing one element of a single crime.

> "The gravamen of the crime is the intentional attempt to place another person in fear. Defendant could have done several different acts and, if he intended thereby to attempt to place [the victim] in fear, would have committed menacing. The jury did not have to agree unanimously that he did any specific act that would cause fear in order to find him guilty of menacing."

*Id.* at 107-08; *accord State v. Greeley*, 220 Or App 19, 24, 184 P3d 1191 (2008) ("The decisive question here is whether * * * the jury improperly was allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime or, as in *King*, the trial court properly instructed the jury because the state merely adduced alternative evidence to establish a single offense.").

The question in this case, therefore, reduces to this: Is third-degree assault committed by personally inflicting an injury on a person, the same crime as third-degree assault committed by aiding the assailant by being actually present? The answer to that question does not lie in how the statute is formatted; all of the 17 different crimes that constitute aggravated murder are consolidated under one number, ORS 163.095, and the different ways of being under the influence of intoxicants for the purposes of a single crime, DUII, are as well—yet the 17 different factual bases for establishing the element of aggravation establish 17 different crimes, while the two factual bases for establishing intoxication are merely different ways to accomplish a single crime, DUII. The determination appears to be a matter of legislative intent, discerned through deployment of the usual interpretative strategies. *King*, 316 Or at 446 (seeking legislative intent).

In the present case, however, that analysis is not necessary. The Supreme Court has already made the determination in *Pine*. In that case, the question before the court was whether "a defendant who provides on-the-scene aid to another person committing an assault, but who personally does not cause physical injury to the victim, nonetheless can be convicted of third-degree assault * * *." *Pine*, 336 Or at

196. In the process of answering that question in the negative, the court reasoned that one of the elements of third-degree assault was causing physical injury. *Id.* at 200. A person who merely aids or in some way contributes to the injury without actually causing it, therefore, cannot be guilty of third-degree assault for being the person actually present and aiding in the attack. *Id.* at 205. Rather, the person actually present can be convicted of third-degree assault only if he or she "inflicted physical injury directly himself or herself, or * * * engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury." *Id.* at 207. It necessarily follows that (1) actual physical infliction of injury and (2) aiding another in doing so are two alternative methods of meeting the "causes" element of a single crime, third-degree assault. That conclusion, in turn, necessarily implies that a concurrence instruction was not necessary in this case. There is no danger that defendant was convicted without 10 jurors agreeing that his conduct met all of the elements of the crime as that crime was presented to the jury without objection. Some may have been persuaded that he was the actually present aider, and others might have been persuaded that he was the assailant, and others might have been persuaded that he was both, but 10 believed that, in one manner or another, he caused the victim's injury.

Affirmed.