598 December 27, 2013 No. 64

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JESSE JEROME PHILLIPS,
*Petitioner on Review.*

(CC 080431569; CA A140377; SC S059835)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 13, 2012; resubmitted January 7, 2013.

Rankin Johnson, Portland, argued the cause and filed the brief for respondent on review.

Jamie K. Contreras, Assistant Attorney General, Salem, argued the cause for respondent on review. Greg Rios, Assistant Attorney General, filed the brief. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* On appeal from Multnomah County Circuit Court, Youlee Y. You, Judge. 242 Or App 253, 255 P3d 587 (2011).

**KISTLER, J.**

A jury found defendant guilty of third-degree assault. *See* ORS 163.165(1)(e).[1] The trial court's instructions permitted the jury to find defendant liable for that crime either as the principal or as an accomplice. Throughout this litigation, defendant has argued that, as a matter of statutory and constitutional law, the jurors had to agree on which role he played in the assault: Did he hit the victim or did he aid and abet the person who did? The trial court declined to give defendant's requested instruction on that issue, and the Court of Appeals affirmed. *State v. Phillips*, 242 Or App 253, 255 P3d 587 (2011). We allowed defendant's petition for review and now affirm the Court of Appeals decision and the trial court's judgment. We hold that, even though the trial court should have given defendant's requested instruction, the error was harmless.

This case arose out of a dispute over a cell phone. The victim sold defendant a cell phone with prepaid minutes. Defendant made a down payment when he got the cell phone and agreed to pay the balance in the future. When defendant failed to pay the balance owed, the victim contacted the cell phone provider and caused the remaining prepaid minutes to be cancelled, angering defendant.

A few days after the victim cancelled the remaining prepaid minutes, the victim and his older brother went over to a neighbor's house to smoke a bowl of methamphetamine. When they got there, they discovered that defendant and two of his friends were there, and a fight broke out among the victim, the victim's brother, defendant, and defendant's two friends. There is no dispute that, during the fight, defendant hit the victim's brother.[2] There is also no dispute that, during the fight, either defendant or defendant's friend hit the victim in the face and broke the bone around the victim's

---

[1] ORS 163.165(1) specifies nine ways in which a person can commit third-degree assault. When we refer to third-degree assault in this opinion, we refer only to ORS 163.165(1)(e), which provides that a person commits that crime "if the person *** [w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another."

[2] The victim's brother testified, and no witness disputed, that defendant "punched [the brother] in the nose." With that blow, defendant "broke the [brother's nasal] bone, took it out of the skin."

eye.[3] What is in dispute is the role that defendant played in causing the victim's injury. The evidence at trial permitted the jury to draw three different conclusions regarding that issue.

First, the jury could have found that defendant initially hit the victim's brother, disabling him. After that, defendant's two friends held the victim's arms while defendant hit the victim in the face, breaking the bone around his eye.

Second, the jury could have found that one of defendant's friends hit the victim in the face, breaking the bone around his eye, and that defendant hit the victim's brother to prevent him from coming to the victim's aid. Under that version of the facts, the jury could have found that defendant did not hit the victim but that he aided and abetted the person who did.

Third, the jury could have found that defendant hit the brother but that, when he did so, defendant was unaware that one of his friends either was hitting or was going to hit the victim. Under that version of the facts, the jury could have found that defendant neither hit the victim nor aided and abetted the person who did.

In instructing the jury, the trial court explained the elements of third-degree assault under ORS 163.165(1)(e). It also told the jury the circumstances in which one person will be liable for another person's criminal conduct for aiding and abetting that conduct. *See* ORS 161.155 (defining liability for aiding and abetting another person's commission of a crime). The trial court did not, however, give defendant's requested instruction, which would have told the jury that 10 jurors had to agree whether defendant was liable for third-degree assault either because he hit the victim or because he aided and abetted the person who did. The jury returned a verdict finding defendant liable for third-degree assault for the injuries that the victim sustained.[4]

---

[3] Defendant and his witnesses testified that defendant's friend was the person who hit and injured the victim. Conversely, the victim and his brother testified that defendant was the person who hit and injured the victim.

[4] The state had charged defendant with three counts of assault. The jury acquitted defendant of the first count, which charged him with second-degree

On appeal, defendant assigned error to the trial court's refusal to give his requested instruction, and the Court of Appeals affirmed. The Court of Appeals reasoned that defendant "caused" the victim's injury within the meaning of the third-degree assault statute if defendant either inflicted the injury himself or aided another in doing so. 242 Or App at 263. The court explained that, because direct infliction of injury and aiding another in inflicting that injury were alternative factual ways of proving a single element of third-degree assault (causation), 10 jurors need not agree which set of facts proved that element. *Id.* We allowed defendant's petition for review to consider whether, either as a matter of statute or constitutional law, at least 10 jurors must agree whether defendant was liable as a principal or as an accomplice.

Before turning to that issue, it is helpful to discuss briefly the crime of third-degree assault. ORS 163.165(1)(e) provides that a person commits that crime "if the person *** [w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another." Under that statute, three persons are necessary for the crime of third-degree assault: a victim who suffers physical injury, a person who "causes" that injury, and a third person actually present who aids the infliction of that injury. *State v. Pine*, 336 Or 194, 82 P3d 130 (2003). A person can "cause" physical injury within the meaning of ORS 163.165(1)(e) in one of two ways. *Id.* at 207. A person can either "inflic[t] physical injury directly himself or herself" or, alternatively, "engag[e] in conduct so extensively intertwined with [another person's] infliction of the injury that such conduct can be found to have produced the injury." *Id.*

In *Pine*, this court quoted the following passage from *State v. Nefstad*, 309 Or 523, 789 P2d 1326 (1990), to illustrate when a person's conduct will be "so extensively intertwined with [another person's] infliction of the injury" that it will "cause" the injury:

assault for causing "serious physical injury" to the victim. The jury convicted defendant of the second and third counts, which charged him with third-degree assault for causing physical injury, respectively, to the victim and his brother while being aided by another person actually present. Only the conviction on the second count for causing physical injury to the victim is at issue on review.

"'Joining in the stabbing of a dying victim or restraining the victim so that he cannot avoid the fatal knife thrusts constitutes "personally" committing the homicide. Thus, in the instant case, even if [the] defendant choked and restrained the victim[,] but did not also stab him, nonetheless [the] defendant "personally" committed this homicide[,] and he is directly responsible for it.'"

*Id.* at 206 (quoting *Nefstad*, 309 Or at 543; brackets in *Pine*); *see also id.* at 206-07 and n 4 (explaining that, although the issues in *Pine* and *Nefstad* were not identical, *Nefstad*'s reasoning was persuasive in determining the meaning of "cause" in the third-degree assault statute).

The court also explained in *Pine* that "the fact that a defendant provided on-the-scene aid to another person who inflicted physical injury upon a victim does not, in itself, render the defendant liable for third-degree assault under that statute." *Id.* at 207; *see also id.* at 205 (concluding that "cause" in ORS 163.165(1)(e) reaches a narrower range of conduct than "aid" does). Under *Pine*, not everyone who aids another in committing third-degree assault will "cause" the injury in a way that renders the aider liable under ORS 163.165(1)(e). Having held that the defendant in *Pine* would not be liable under ORS 163.165(1)(e) if he aided but did not cause the physical injury, the court did not reach the state's argument that the defendant in *Pine* could still be liable for third-degree assault for aiding and abetting the commission of that crime. *Id.* at 207-08; *see* ORS 166.155 (defining liability for aiding and abetting another person's criminal conduct). The court explained that the state had not preserved that theory of liability. *Id.*

As we read *Pine*, it stands for the following propositions: A person need not inflict physical injury personally to "cause" that injury within the meaning of ORS 163.165(1)(e). Some acts by a third person actually present that aid the infliction of physical injury will also "cause" the injury— namely, acts that are "extensively intertwined" with causing the injury. However, not every act by a third person actually present that aids the infliction of physical injury will "cause" the injury and render the third person liable under ORS 163.165(1)(e). Finally, *Pine* recognized the possibility

that a person could be liable for third-degree assault under ORS 161.155 for aiding and abetting the commission of that crime, but the court did not have occasion to decide when, if ever, the circumstances would justify imposition of aid-and-abet liability.

This case differs from *Pine* in one respect (and in another respect that we discuss later in the opinion). In this case, the trial court's instructions permitted the jury to find defendant liable for third-degree assault if he aided and abetted the person who caused the victim's physical injury, and defendant has not challenged that instruction on review.[5] Specifically, defendant does not dispute on review that, if the jury found that one of his friends hit the victim while defendant hit the victim's brother to prevent him from coming to the victim's aid, the jury could find defendant liable for third-degree assault because he aided and abetted his friend's assault on the victim.

Defendant's argument focuses on a different issue. He argues that the trial court erred in not instructing the jury that 10 of its members had to agree whether he hit the victim or whether he aided and abetted the person who did. In *State v. Pipkin*, 354 Or 513, ___ P3d ___ (2013), we clarified the proper method for analyzing a claim that either the state or federal constitution requires jury concurrence. When a statute specifies alternative means of committing a crime, the initial question is what, as a matter of legislative intent, are the elements of the crime that the state must prove. *See id.* at 521-22. If the legislature intended that each alternative means is a separate element and if the indictment charges that element, then at least 10 members of the jury have to agree on it. *Id.* at 522, 527. If, however, the alternative means are merely different factual ways of proving a single element, then the question becomes whether permitting the jury to find that element based on that factual mix violates either Article I, section 11, of the Oregon Constitution or the Due Process Clause. *See id.* at 522.

---

[5] Defendant argued in the Court of Appeals that the trial court erred in instructing the jury that it could find him liable for aiding and abetting. However, the Court of Appeals concluded that defendant had not preserved that issue, and it declined to reach it under the plain error doctrine. 242 Or App at 258-59. Defendant has not challenged that ruling on review.

In this case, the Court of Appeals began by seeking to determine the legislature's intent. As noted above, the Court of Appeals held that, as a matter of legislative intent, "(1) actual infliction of injury and (2) aiding another in doing so are two alternative methods of meeting the 'causes' element of a single crime, third-degree assault" and that, as a result, 10 jurors need not agree on how defendant "caused" the victim's physical injury. *Phillips*, 242 Or App at 263. The Court of Appeals' interpretation of ORS 163.165(1)(e) is difficult to square with this court's interpretation of that statute in *Pine*. In *Pine*, this court held that not everyone who aids the infliction of physical injury "causes" that injury within the meaning of ORS 163.165(1)(e). *Pine*, 336 Or at 205, 207. To the extent that the Court of Appeals held that everyone who aids the infliction of physical injury "causes" the injury within the meaning of ORS 163.165(1)(e), its interpretation conflicts with *Pine* and cannot stand.

The Court of Appeals' reasoning is problematic for another reason. ORS 161.155 defines when one person will be "criminally liable for the conduct of another person constituting a crime." One instance is when a person aids and abets another person's commission of a crime. *See* ORS 161.155(2)(b) (defining liability for aiding and abetting another person's criminal conduct); *State v. Lopez-Minjarez*, 350 Or 576, 582-83, 260 P3d 439 (2011) (explaining the elements required to prove liability for aiding and abetting another person's commission of a crime).[6] In *State v. Blake*, 348 Or 95, 101, 228 P3d 560 (2010), this court explained that "[a]ccomplice *** liability is not itself an independent offense." *Id.* Rather, "[a]ccomplice liability makes a person who aids or abets a crime liable for that crime even though the accomplice may not have committed any of the acts that the crime entails." *Id. Blake* thus recognized that the elements necessary to prove accomplice liability ordinarily will

---

[6] The court explained in *Lopez-Minjarez*:

"[ORS 161.155(2)(b)] requires a specific intent: the intent to promote or facilitate the commission of the crime committed by another. The statute also has a conduct element: with that requisite intent, the person must assist, agree to assist, or attempt to assist in either the planning or commission of the crime committed by another."

350 Or at 582.

be separate from and in addition to the elements necessary to prove the principal's liability for the underlying offense.

As we reiterated in *Pipkin*, jury concurrence is required for each legislatively defined element necessary to impose criminal liability. *See* 354 Or at 527. Moreover, as *Blake* explained, the elements necessary to prove liability as an aider and abettor ordinarily will not be coextensive with the elements necessary to prove liability as a principal. *See* 348 Or at 101. It follows that 10 jurors usually will have to agree on the elements necessary to prove that a defendant is liable for aiding and abetting another person's commission of a crime.[7] Put differently, if the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other. The trial court erred in refusing to give defendant's requested instruction.

The question that remains is whether, in light of the facts of this case and the terms of the third-degree assault statute, that error was harmless.[8] In this case, the facts permitted the jury to find defendant liable for third-degree assault on one of two bases: (1) defendant hit the victim in the face while defendant's friends held the victim's arms or (2) one of defendant's friends hit the victim in the face while defendant hit the victim's brother to keep him from coming to the victim's aid.[9] Under the first set of facts, the jury could

---

[7] We need not decide what the result would be if the legislature had defined criminal liability differently. *See Holland v. State*, 280 NW2d 288 (Wis 1979) (considering a state statute that required proof of a single element (that the defendant was a principal) and that defined a principal as a person who either committed a crime directly or intentionally aided and abetted its commission); *cf. State v. Boots*, 308 Or 371, 379-80, 780 P2d 725 (reserving the question whether a statute similar to the one at issue in *Holland* would run afoul of either Article I, section 11, or the Due Process Clause).

[8] It is possible to read the Court of Appeals' opinion as being confined to the facts of this case and thus implicitly resting on a harmless error analysis.

[9] As noted above, the facts also permitted the jury to find that defendant was unaware that one of his friends was hitting or about to hit the victim when defendant hit the victim's brother. Those facts, however, would not have permitted the jury to find defendant liable for third-degree assault either for causing the victim's physical injury or for aiding and abetting the person who caused it.

find that defendant "caused" the victim's injury by directly inflicting it. *See Pine*, 336 Or at 207. Under the second set of facts, the jury could find that defendant's conduct was "so extensively intertwined with [another person's] infliction of the [victim's] injury" that defendant's conduct "caused" that injury, as this court explained the meaning of "cause" in *Pine*. *See id.* at 207.

Specifically, if defendant had held the victim so that his friend could hit the victim in the face, there would be little dispute that defendant "caused" the resulting physical injury within the meaning of ORS 163.165(1)(e). *See Pine*, 336 Or at 206 (explaining that restraining the victim so that another person could hit him would be so extensively intertwined with the infliction of physical injury that the restraint would be as much a cause of the injury as the blow). In this case, defendant did not hold the victim so that his friend could hit him.[10] Rather, he hit the victim's older brother to prevent the brother from coming to the victim's aid. It is difficult, however, to see how the latter act placed the victim in any different situation from the former. If the jury found defendant liable for aiding his friend's infliction of physical injury, it had to find that defendant acted for the purpose of making the victim vulnerable to that injury. *See Lopez-Minjarez*, 350 Or at 582-83 (explaining the mental state necessary for aiding and abetting). Moreover, in this case, the direct and immediate effect of defendant's act was to prevent the victim from escaping the blow that resulted in his injury. On this record, the jury could find that, by hitting the brother to keep him from coming to the victim's aid,

*See Lopez-Minjarez*, 350 Or at 582 (explaining that to find a defendant liable for aiding and abetting another person's commission of a crime, the jury would have to find that the defendant had "the intent to promote or facilitate the commission of the crime").

[10] One witness agreed on cross-examination that he had testified at the grand jury that "when [the victim] walked out, that actually [defendant] grabbed [the victim], and that then a kid hit [the victim]." Considered in isolation, that grand jury testimony could be read two ways. The word "then" could imply that "a kid hit" the victim while defendant was holding him, or it could imply that the kid hit the victim after defendant had let go of the victim. At trial, the witness clarified that the latter meaning was correct; he testified that defendant was not "holding [the victim] while the kid hit him." Even if the jury could have disregarded the witness's trial testimony, that does not help defendant. If defendant were holding the victim when his friend hit him, defendant "caused" the injury as this court explained that term in *Pine*.

defendant "caused" the victim's injury, as this court defined that term in *Pine*.

Under *Pine*, the only two sets of facts that permitted the jury to find defendant liable for third-degree assault were alternative factual ways of proving a single element of third-degree assault—that defendant "caused" the victim's physical injury. On this record, the jury was not presented with two competing theories of liability, each of which required proof of discrete, separate facts. Rather, the facts in this case presented the jury with two alternative factual ways of proving the "causes" element of third-degree assault.

To be sure, the trial court instructed the jury that it could find defendant liable for aiding and abetting the infliction of injury, and some jurors could have found defendant liable under ORS 161.155 rather than directly under ORS 163.165(1)(e). However, when the only act that could have constituted aiding and abetting the infliction of physical injury under ORS 161.155 also constituted "causing" that injury within the meaning of ORS 163.165(1)(e), we fail to see how any error in requiring jury concurrence on one theory or the other prejudiced defendant. The same is true for intent. A finding that defendant intended to promote or facilitate the assault subsumes a finding that he intentionally or knowingly caused the injury. *See State v. Boots*, 308 Or 371, 377-78 n 6, 780 P2d 725 (1989) (distinguishing cases from other jurisdictions because the facts necessary to prove one theory of liability were subsumed within the other). On this record, we cannot say that the trial court committed reversible error in declining to give defendant's requested instruction.

That is not the end of the inquiry, however. Even though the trial court's failure to give defendant's requested instruction did not prejudice defendant's right to have 10 jurors agree on each legislatively defined element of the offense, ORS 163.165(1)(e) still permitted the jury to find that defendant "caused" the injury by either inflicting the injury directly or by taking actions that were extensively intertwined with causing it. Both Article I, section 11, of the Oregon Constitution and the Due Process Clause place limits on the legislature's ability to define alternative factual

means of proving a single element. *See Pipkin*, 354 Or at 527-29 (Article I, section 11); *Schad v. Arizona*, 501 US 624, 637-38, 111 S Ct 2491, 115 L Ed 2d 555 (1991) (due process).[11] And the constitutional question in this case reduces to whether the legislature could provide that a person "causes" physical injury either by directly inflicting it or by engaging in conduct "so extensively intertwined" with inflicting the injury that the conduct can be said to have caused it. *See Pine*, 336 Or at 207 (describing those two alternative means of causing physical injury).

On that issue, defendant relies solely on the common law to argue that permitting the jury to find him liable for third-degree assault based on either of those two theories violates the state and federal constitutions. He reasons that, because the common law treated principal and accomplice liability as separate, distinct theories, permitting the jury to base its verdict on what amounts to a combination of those theories violates his constitutional rights. Before turning to defendant's argument, it is helpful to describe the common law that preceded the ratification of the Fourteenth Amendment in 1868 and then turn to the Oregon statutes and cases that preceded the adoption of the relevant part of Article I, section 11, in 1934.

The common law divided persons charged with felonies into three classes: principals in the first degree; principals in the second degree; and accessories before the fact. *See* Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.1(b) (2d ed 2003).[12] "[A] principal of the first degree is one who does the act, either himself directly, or by means of an innocent agent." Joel Prentiss Bishop, 1 *Commentaries on the Criminal Law* § 456 (2d ed 1858). "A principal of the second

---

[11] Article I, section 11, of the Oregon Constitution provides, in part:

"[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict."

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV, § 1.

[12] The common law also classified persons as accessories after the fact if they aided a person after the commission of a felony. *See* LaFave, 2 *Substantive Criminal Law* § 13.6(a). That classification is not relevant to the issues defendant raises.

degree is one who is present lending his countenance and encouragement, or otherwise aiding, while another does it." *Id.*; *accord* James Fitzjames Stephen, 2 *A History of the Criminal Law of England* 230 (1883). At common law, a principal in the second degree could be actually or constructively present. Bishop, *Criminal Law* § 460; LaFave, 2 *Substantive Criminal Law* § 13.1(b). Finally, a person who aided and abetted the commission of a crime but who was not actually or constructively present was an accessory before the fact. Bishop, 1 *Criminal Law* §§ 473-74.

Viewed through a common-law lens, a person who "caused" physical injury within the meaning of ORS 163.165(1)(e) would be either a principal in the first degree or a principal in the second degree. If a person caused the injury by directly inflicting it, the person would be a principal in the first degree. If the person caused the injury because that person's conduct was extensively intertwined with the injury's infliction, that person would be a principal in the second degree; that is, he or she would be a person who, while actually present, aided the infliction of physical injury. It follows that, whether defendant personally hit the victim or hit the victim's brother to keep him from coming to the victim's aid, defendant would have been either a principal in the first or second degree at common law. He would not have been an accessory before the fact because, at a minimum, he was actually present when he aided his friend's infliction of the victim's physical injury.

At common law, the distinction between a principal in the first and second degree had "no practical use or effect whatever." Bishop, 1 *Criminal Law* § 456. The state could charge a defendant as a principal in the second degree and prove that he was a principal in the first degree or vice versa.[13] *Id.* As Bishop explained, "[t]he distinction is in all respects without a difference." *Id.* Similarly, at common law, "[a] second degree principal could be tried and convicted

---

[13] Bishop stated:

"And now an indictment against a man as principal of the first degree is sustained by proof of his being principal of the second degree; and, on the contrary, an indictment against him as principal of the second degree is supported by proof that he is principal of the first degree."

Bishop, *Criminal Law* § 456.

even though the person who actually committed the crime had not yet been tried." LaFave, 2 *Substantive Criminal Law* § 13.1(d). Whatever distinctions may have existed at common law between principals and accessories before the fact, the common law did not recognize a distinction of any practical significance between principals of the first and second degree.

Oregon went further than the common law. It made no distinction between principals and accessories before the fact. The Deady Code provided:

> "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime, or aid and abet in its commission, though not present, are principals, and to be tried and punished as such."

General Laws of Oregon, Crim Code, ch LIII, § 691, p 573 (Deady 1845-1864). Given that legislative choice, this court held in 1887 that it was immaterial that the indictment charged the defendant as a principal in the victim's murder but that the state proved only that the defendant aided and abetted another person who administered the fatal poison. *State v. Moran*, 15 Or 262, 275, 14 P 419 (1887). Since then, this court consistently has adhered to that proposition. *See State v. Fraser*, 105 Or 589, 594-95, 209 P 467 (1922); *State v. Branton*, 33 Or 533, 540-42, 56 P 267 (1899).

With that background in mind, we turn to Article I, section 11. As initially adopted in 1857, Article I, section 11, did not expressly address jury unanimity or jury concurrence. Or Const, Art I, § 11 (1857); *Pipkin*, 354 Or at 526 (discussing that issue). In 1934, the people approved a legislatively referred amendment to Article I, section 11, that for the first time expressly addressed jury concurrence and jury unanimity. The amendment added the following provision to Article I, section 11: "[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict." *See* Or Laws 1935, p 5.

Nothing in the context that preceded the enactment of the 1934 amendment to Article I, section 11, suggests any

state constitutional problem with defining "causes" broadly enough to include actors who, at common law, would have been principals in the first and second degree. Rather, as explained above, the common law, the Deady Code, and the Oregon cases that preceded the adoption of the 1934 amendment regarded those categories as interchangeable.

The same is true for the Fourteenth Amendment, which was ratified by three-fourths of the states in 1868. To be sure, defendant argues that the common law that preceded the ratification of the Fourteenth Amendment distinguished between principals and accessories before the fact. The difficulty, however, with defendant's argument is that the word "causes" in ORS 163.165(1)(e) embraces only principals in the first and second degree. The common law that preceded the adoption of the Fourteenth Amendment drew no meaningful distinction between those two classes of actors. Even if there might be a federal due process problem with a statute that allowed a jury to find a defendant liable for a crime without regard to whether the defendant acted as a principal or an accessory before the fact, this case does not present that problem. Nothing in the common law suggests that due process would be offended by permitting the state to prove that a defendant caused a victim's physical injury either by directly inflicting that injury or by taking actions while actually present that were extensively intertwined with the infliction of the injury. *See Schad*, 501 US at 637 (plurality); *id.* at 649-51 (Scalia, J., concurring in part and concurring in the judgment).[14]

We summarize our conclusions briefly. The requirement recognized in *Boots* and reaffirmed in *Pipkin* that at least 10 jurors must agree on each legislatively defined

---

[14] In determining whether due process permitted a legislatively defined element to be proved by alternative factual means, the plurality in *Schad* considered history, the breadth of the practice, and the "moral and practical equivalence" of the alternative means. 501 US at 637 (plurality). In this case, defendant bases his due process argument solely on history and does not contend that the two ways of proving "cause" in ORS 163.165(1)(e) are either novel or lack "moral and practical equivalence." Justice Scalia's separate opinion in *Schad* looked solely to history to determine what due process requires. *See* 501 US at 649-51 (opinion concurring in part and concurring in the judgment). As explained above, defendant's argument based solely on history fails, and he provides no other reason for us to conclude that the Oregon legislature's decision in ORS 163.165(1)(e) to permit juries to find alternative factual bases for proving causation violates due process.

element of a crime means that 10 jurors ordinarily must agree whether a defendant committed a crime him or herself or, alternatively, whether the defendant aided and abetted another person's commission of that crime. Even though the trial court should have given defendant's requested instruction to that effect, the error was harmless because, on the facts in this case, the factual findings necessary to find defendant liable on one theory either subsumed or were the same as the factual findings on the other theory. Finally, the legislative determination that causation in ORS 163.165(1)(e) can be proved either by directly inflicting an injury or by engaging in acts extensively intertwined with inflicting that injury does not violate either Article I, section 11, or the Due Process Clause.

The Court of Appeals decision and the judgment of the circuit court are affirmed.