Submitted on remand from the Oregon Supreme Court July 10, 2014, affirmed April 22, petition for review denied July 30, 2015 (357 Or 596)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MACIEL MUNOZ,
*Defendant-Appellant.*

Washington County Circuit Court
C092027CR; A147842

348 P3d 296

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the answering brief for respondent. On the supplemental briefs were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Senior Assistant Attorney General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.*

DUNCAN, P. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

## DUNCAN, P. J.

In this criminal case, defendant was convicted of murder for the stabbing of a person he and two associates believed to be a rival gang member. Defendant appealed and assigned error to the trial court's failure to instruct the jurors that they must concur as to whether he was criminally liable as a principal or as an accomplice. In *State v. Munoz*, 255 Or App 735, 298 P3d 595 (2013), we affirmed defendant's conviction based on our reasoning in *State v. Phillips*, 242 Or App 253, 255 P3d 587 (2011) (*Phillips I*), which had rejected a similar argument regarding a concurrence instruction. The Supreme Court subsequently disagreed with our reasoning in *Phillips I*, holding that the trial court erred in that case in failing to give a concurrence instruction; nevertheless, the court affirmed on the ground that the error was harmless. 354 Or 598, 317 P3d 236 (2013) (*Phillips II*).

In the wake of *Phillips II*, the Supreme Court vacated and remanded this case for reconsideration. *State v. Munoz*, 355 Or 567, 329 P3d 770 (2014). On reconsideration in light of *Phillips II*, we conclude that the trial court erred in failing to give a jury concurrence instruction but hold that, as in *Phillips II*, any error was harmless. Accordingly, we affirm.

Defendant and two codefendants, Sias and Corbett, were indicted for murder for "unlawfully and intentionally caus[ing] the death" of the victim. The state presented evidence that the three defendants—all members of the same gang—were driving around looking for members of a rival gang when they came upon the victim and his friend, who were walking down the street. The victim had associated with members of the rival gang, but was not himself a gang member. The defendants stopped their car, got out, and confronted the victim and his friend, who ran once they saw that one of the defendants had a knife. The defendants ran after them and caught up to the victim. The victim was punched, kicked, stabbed, and left to bleed to death, and the defendants returned to their car and drove away. The entire encounter, from the time the defendants stopped their car until they left, lasted approximately a minute and a half.

Although there were several witnesses who had observed three people kicking and punching the victim, there was conflicting evidence at trial about which of the three defendants actually stabbed the victim, and whether the victim had been stabbed by one knife or two. The state presented evidence, including Corbett's knife and statements that he had made about "going savage" on the victim, to prove that Corbett had stabbed the victim. Yet the state also presented evidence that, while in jail, defendant had claimed to be responsible for the stabbing. Specifically, the state presented evidence that defendant told a fellow inmate that he had run up quickly on the victim, stabbed him three times, and then left him "spread eagle" on the ground. The inmate testified that defendant said, "I wasn't fighting him, I was just stabbing him."

Both defendant and Corbett used that conflicting evidence at trial to blame each other for the killing. Corbett admitted that he had stabbed the victim twice in the back, but he argued that defendant had chased down the victim and inflicted fatal stab wounds to the victim's chest and side before Corbett arrived. Defendant, meanwhile, argued that Corbett was the only one who stabbed the victim, and that defendant's jailhouse confession was invented to make him appear tougher to other inmates. Defendant's theory of the case was that he and Sias, who were faster than Corbett, had chased down the victim and punched and kicked him, and that Corbett arrived later and—to their surprise—"brought a knife to a fist fight."

In light of the different factual theories, defendant asked the trial court to require the state to elect whether it was proceeding on the theory that defendant had committed murder as a principal or by aiding and abetting one of his codefendants. Alternatively, he asked the court to instruct the jurors that they must agree on whether he was guilty of murder "because he aided and abetted in the commission of the crime or in the alternative *** intentionally and actually caused the death of [the victim]." The trial court did not require the state to elect a theory and declined to give the instruction, and the jury ultimately found defendant guilty of murder.

Defendant appealed and assigned error to the trial court's failure to instruct the jury that its members had to agree on whether he was liable as a principal or for aiding and abetting. In a per curiam opinion, we rejected that argument based on our then-recent decision in *Phillips I*. We explained that, under our reasoning in *Phillips I*, a concurrence instruction was necessary to avoid the possibility that the requisite number of jurors did not agree on what crime, if any, the defendant committed, not the possibility that the jurors failed to agree on what particular acts of the defendant constituted an element of a single crime. *Munoz*, 255 Or App at 736. We then held that, although "[s]ome jurors might have believed that defendant was the principal during the stabbing, and others might have believed that he was an accomplice to one of the other gang members who stabbed the victim, * * * the requisite number of jurors agreed that defendant, either as principal or accomplice, intentionally caused the victim's death." *Id.* at 736-37. Thus, we concluded that, because there "was no danger that defendant would be convicted without juror agreement as to all of the elements of the crime of murder, * * * the trial court did not err in refusing to give a concurrence instruction." *Id.* at 737.

At the time that we decided *Munoz*, review of our decision in *Phillips I* was pending in the Supreme Court. 351 Or 586 (2012). Thereafter, the Supreme Court issued an opinion that affirmed our decision in *Phillips I*, but on different grounds. In *Phillips II*, the Supreme Court explained that "jurors usually will have to agree on the elements necessary to prove that a defendant is liable for aiding and abetting another person's commission of a crime." 354 Or at 606. Thus, "if the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."[1] *Id.*

---

[1] Article I, section 11, of the Oregon Constitution provides, in part:

"[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict."

After concluding that the trial court erred in failing to give the concurrence instruction, the Supreme Court turned to whether that error was harmless. The court explained that the facts would have permitted the jury to find the defendant liable for third-degree assault on one of two bases: "(1) defendant hit the victim in the face while defendant's friends held the victim's arms or (2) one of defendant's friends hit the victim in the face while defendant hit the victim's brother to keep him from coming to the victim's aid." *Id.* Under either theory, the defendant could be said to have "caused" the injury—by directly inflicting it (the first set of facts) or by engaging in conduct "'so extensively intertwined with [another person's] infliction of the [victim's] injury'" (the second set of facts). *Id.* at 607 (quoting *State v. Pine*, 336 Or 194, 207, 82 P3d 130 (2003)). For that reason, there were not "two competing theories of liability, each of which required proof of discrete, separate facts. Rather, the facts in [*Phillips II*] presented the jury with two alternative factual ways of proving the 'causes' element of third-degree assault." *Id.* at 608. Thus, the court held that the failure to give a concurrence instruction was harmless:

> "[W]hen the only act that could have constituted aiding and abetting the infliction of physical injury under ORS 161.155 also constituted 'causing' that injury within the meaning of ORS 163.165(1)(e), we fail to see how any error in requiring jury concurrence on one theory or the other prejudiced defendant. The same is true for intent. A finding that defendant intended to promote or facilitate the assault subsumes a finding that he intentionally or knowingly caused the injury. *See State v. Boots*, 308 Or 371, 377-78 n 6, 780 P2d 725 (1989) (distinguishing cases from other jurisdictions because the facts necessary to prove one theory of liability were subsumed within the other). On this record, we cannot say that the trial court committed reversible error in declining to give defendant's requested instruction."

354 Or at 609.[2]

---

[2] The court then went on to address whether the third-degree assault statute, by defining alternative factual means of proving a single element, offended Article I, section 11, or the Due Process Clause under the Fourteenth Amendment to the United States Constitution. 354 Or at 612 (holding that "[n]othing in the common law suggests that due process would be offended by permitting the state to prove that a defendant caused a victim's physical injury either by directly

After issuing its decision in *Phillips II*, the Supreme Court vacated our decision in this case and remanded it for reconsideration. On remand, both parties agree that, under the reasoning in *Phillips II*, the trial court erred in refusing to give the jury-concurrence instruction that defendant requested. We agree and accept the state's concession of error regarding the failure to give the instruction. *See Phillips II*, 354 Or at 606 ("[I]f the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that [the requisite number of] jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other.").

The parties' dispute on remand instead focuses on whether, in light of the harmless error analysis in *Phillips II*, the trial court's failure to give a concurrence instruction actually prejudiced defendant in this case. According to defendant, this case differs from *Phillips II* in that the factual findings necessary to find defendant liable as a principal were not subsumed or the same as the factual findings necessary to find him liable as an accomplice; rather, the jury in this case "could have found defendant guilty for aiding and abetting without finding that he caused the victim's death beyond a reasonable doubt." Defendant identifies various ways in which that could have happened:

> "[R]easonable jurors could have concluded that the aiding evidence supported conviction beyond a reasonable doubt, and declined to draw further conclusions about defendant's role in the moments surrounding the stabbing—a moment for which the state presented no direct evidence. Perhaps defendant was *not* one of the two people that the witness observed near the end of the chase. Perhaps defendant only kicked the victim after his codefendant had already brought him to the ground by stabbing him. Or perhaps jurors were not convinced beyond a reasonable doubt that the state had proven that defendant engaged in *any* assaultive conduct, but merely identified the target and briefly gave chase. Possibilities such as those, in

---

inflicting that injury or by taking actions while actually present that were extensively intertwined with the infliction of the injury").

which defendant did not directly cause the victim's death, but which do not preclude a finding that defendant aided and abetted the crime, distinguish this case from *Phillips*."

(Emphasis by defendant.)

The problem for defendant is that none of those "possibilities" is even remotely likely on this record. First, there is no chance that the jury would have found that defendant had not "engaged in any assaultive conduct, but merely identified the target and briefly gave chase." The state presented overwhelming evidence that defendant not only gave chase, but then kicked and punched the victim. In fact, during closing argument, defendant's own counsel pointed to those "unbiased" witness accounts to discredit defendant's jailhouse "confession" about stabbing the victim. Counsel argued:

"[The fellow inmate] said that [defendant] stabbed [the victim], that I stabbed him, I didn't strike him, we know that's wrong. *We have several unbiased witnesses saying that they saw three people kicking and or punching [the victim].* Everything that [the inmate] is saying about what [defendant] supposedly told him *does not track with the other witnesses and the unbiased witnesses and the other information that is very clear.*"

(Emphasis added.) Later, defendant's counsel pointed to that same eyewitness testimony as proof that Corbett, not defendant, was the person who stabbed the victim:

"Two people chasing one at first and then later on [the witness] sees three people, he sees three people attacking [the victim]. This is consistent with [defendant] and Mr. Sias being in front chasing [the victim] and Mr. Corbett with the knife being—lagging behind."

In other words, not even defendant suggested at trial that his involvement was limited to briefly giving chase. Rather, there were two factual scenarios in play before the jury: (1) Defendant had chased down and stabbed the victim himself, or (2) defendant had chased down and punched and kicked the victim, and Corbett had been the stabber. Defendant's counsel, during closing argument, downplayed the possibility that defendant was a "second stabber" and focused on the state's theory that, even if defendant had not

stabbed the victim, he was nevertheless liable for the victim's murder as an aider and abettor. In so doing, defendant's counsel essentially conceded that defendant had assaulted the victim before Corbett arrived, but he argued that defendant was unaware that Corbett had a knife or planned to stab the victim to death:

"I think the main question—I'm going to side step the possibility that this—that there's two knives and that [defendant] is a second stabber in this particular case for a minute. And I think the main issue that you're going to be focusing on is what's called aid and abet (indiscernible). And this is the instruction you're going to get concerning [defendant], a person aids or abets another if the person with the intent to promote or make easier the commission of the crime, in this case Murder, encounters, procures, advises, or assists by act or advice—advice the planning or commission of the crime. You're going to have to decide did [defendant] plan anything; was there any evidence that he planned anything? Was there any evidence that he was assisting Mr. Duane Corbett, when Mr. Corbett was killing [the victim]?

*"In order to find the defendant guilty of aiding and abetting the crime you must find that he intended to cause the death of* [the victim]. Knowing the crime is taking place is insufficient to find him guilty as an accomplice. Intending a lesser included offense such as Assault, maybe [defendant] was intending to assault [the victim]. Intending a lesser included of the same crime is insufficient. *So he has to intend to commit murder.*

"There was no plan to kill anyone that night. Duane Corbett brought a knife to a fist fight. There was no second stabber, there was no second knife, it was all Duane Corbett with no consultation with the other two about what he was planning to do that night—or what he did that night.

"* * * * *

"Could [defendant] have been surprised that Mr. Corbett had brought [a] knife to a fist fight?

"If so, if [defendant] had no intention of killing [the victim] and if you have even one reasonable doubt that that's how it might have happened, then you must find [defendant] not guilty of murder."

(Emphasis added.)

The prosecutor, in rebuttal, seized on the fact that defendant's counsel had acknowledged that defendant was the one who caught up to the victim. The prosecutor argued, "[Defendant] caught our victim. He caught him. He ran him down. His lawyer even said it. He caught him. He's the one. That's what he told [his fellow inmate], too. He caught the victim." The prosecutor then argued that the acts of catching the victim and beating him caused the murder:

> "[Defendant] played a key role in aiding and abetting, because remember this: Had it not been for each of these three people punching and kicking our victim, our victim would have had a fighting chance. *Even if [defendant] isn't the stabber, even if he's not the person who stabbed our victim, the fact that [defendant] is punching and kicking him, along with Sias, who's punching and kicking him, while Duane Corbett is stabbing him, the fact that our victim has to defend himself from three different attackers, attacks coming from three different directions, that's what allowed this crime to occur.* This crime would not have happened without * * * for [defendant], would not have been a murder. Essential piece of our puzzle.

> "* * * * *

> "It doesn't matter which one of them fatally stabbed him. It does not matter. The fact of the matter is three people punching, three people kicking, three people surrounding, three people attacking, three people murdering. Each Defendant's necessary for this crime, and all three Defendants intended this crime and participated in a murder."

After closing arguments, the jury was instructed, consistently with what defendant's counsel told the jury, that "[a] person acts intentionally or with intent when that person acts with a conscious objective to cause a particular result. When used in this case, intentionally or with intent means that [defendant] acted with a conscious objective to cause the death of [the victim]."

Thus, in light of the evidence and the theories at trial, the jury was asked to decide whether defendant was liable for the victim's murder either because he stabbed the victim with the intent to cause his death or because he chased down and punched and kicked the victim with

the intent to cause his death. If the jury found that defendant was not the stabber, it had to have found that he acted with the purpose of making the victim vulnerable to the stabbing. In that event, "there would be little dispute" that defendant "caused" the victim's death, because the acts of chasing down the victim and punching and kicking him were extensively intertwined with the fatal stabbing. 354 Or at 607; *see Pine*, 336 Or at 206 ("[*State v. Nefstad*, 309 Or 523, 789 P2d 1326 (1990), *cert den*, 516 US 1081 (1996)], lends general support to the notion that a criminal statute can impose direct liability upon a defendant who perhaps is not involved to the same extent as a codefendant in inflicting injury (or producing death), depending upon the level of that defendant's involvement in the crime."). Defendant therefore was not prejudiced by the failure to give a concurrence instruction, because the jury was presented with "two alternative factual ways of proving the 'causes' element" of murder. *Phillips II*, 354 Or at 608. Accordingly, we adhere to our original disposition and affirm the judgment of the trial court.

Affirmed.