520 May 13, 2026 No. 405

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Todd MITCHELL,
individually, under ORS 659A.030(1)(g),
*Petitioner,*
*and*

FREHOO, INC.,
dba Stars Cabaret & Steak House, et. al.,
*Respondents Below.*

*v.*

BUREAU OF LABOR AND INDUSTRIES OF THE
STATE OF OREGON
*Respondent.*

Oregon Bureau of Labor and Industries
3716;
A183925

Argued and submitted September 22, 2025.

Angela Ferrer argued the cause for petitioner. Also on the briefs were Andrew Altschul, Courtney Angeli, and Buchanan Angeli Altschul & Sullivan, LLP.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Kamins, Judge, and Pagán, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Petitioner appeals from a Bureau of Labor and Industries (BOLI) final order determining that petitioner, owner of Frehoo, Inc. (Frehoo), aided and abetted sexual harassment under *former* ORS 659A.030(1)(g) (2021), *renumbered as* ORS 659A.030(1)(h) (2025). Petitioner raises two assignments of error. First, he argues that the board erred by determining that he aided and abetted a statutory violation without requiring that he had actual knowledge of the underlying violation. Second, he contends that the board exceeded its authority in holding petitioner jointly and severally liable for the full damage award. We reverse on the first assignment of error, which obviates the need to address the second.

## I.  BACKGROUND

This case concerns an adult entertainment establishment operated by Frehoo, with shares owned by three primary individual owners, including petitioner. Frehoo hired AP2[1]—a 15-year-old victim of child sex trafficking—as a dancer. During her time working for Frehoo, customers touched her sexually. A bartender working at the club recognized AP2 from a missing persons photo and reported that to a Frehoo manager and petitioner. Petitioner directed the club's general manager to contact law enforcement immediately. Following an investigation and a proposed order issued by an administrative law judge, BOLI issued a final order determining Frehoo was liable for subjecting AP2 to sex discrimination via the creation of a hostile working environment in violation of ORS 659A.030(1)(b) and that three owners, including petitioner, were liable for aiding and abetting in violation of *former* ORS 659A.030(g) (2021). *Frehoo, Inc. v. BOLI*, 319 Or App 548, 550, 510 P3d 888 (2022), *rev den*, 370 Or 789 (2023). Respondents appealed, and we reversed after determining that BOLI applied a legal standard to impose aider-and-abettor liability that was not found in the statute. *Id*. at 564-66. On remand, BOLI issued an amended final

---

[1] Consistent with past cases, we refer to complainant as "AP," which stands for "aggrieved person." *Frehoo, Inc. v. BOLI*, 319 Or App 548, 550 n 1, 510 P3d 888 (2022), *rev den*, 370 Or 789 (2023). The original complaint referred to two aggrieved persons—AP1 and AP2, but only conduct related to AP2 remains at issue. *Id*.

order, again determining that Frehoo was liable for subjecting AP2 to sex discrimination in violation of ORS 659A.030(1)(b). BOLI also determined that, applying the correct statutory language, petitioner, but not the other two owners, was liable for aiding and abetting sexual harassment in violation of *former* ORS 659A.030(1)(g) (2021) because petitioner was responsible for enforcing Frehoo's sexual harassment policies and failed to do so, and he should have known that failing to enforce the policies would likely result in sexual harassment. Petitioner appeals from that final order.

In his first assignment of error, petitioner contends that BOLI erred in determining that he aided and abetted unlawful sexual harassment under *former* ORS 659A.030(1)(g) (2021) because it applied the incorrect legal standard and lacked substantial evidence to support its factual findings.

*Former* ORS 659A.030(1)(g) (2021) provides that it is unlawful "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Petitioner argues that BOLI incorrectly applied a negligence standard, holding petitioner liable for aiding and abetting because he "should have known" sexual harassment was likely to occur, rather than requiring that he "knew" of any sexual harassment. Petitioner raises a question of statutory interpretation: whether BOLI correctly interpreted the statute's use of "aid, abet, incite, compel, or coerce" to require that a respondent need not have actual knowledge of the underlying conduct.

## II. STANDARD OF REVIEW

We review agency interpretations of law for legal error and their factual findings for substantial evidence. ORS 183.482(8)(a), (c). When reviewing an agency's interpretation of a statutory provision, we first consider what standard of review, and therefore level of deference, to apply based on whether the term at issue is exact, inexact, or delegative. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000). "Exact terms" express a precise meaning, and as such, their application involves only agency factfinding, which we review for substantial

evidence. *Id*. "Inexact terms" are "less precise" but still embody "a complete expression of legislative meaning." *Id*. at 354. "'Delegative terms' express incomplete legislative meaning that the agency is authorized to complete," requiring the agency to make a policy determination. *Id*. The court reviews the agency's interpretation of delegative terms to determine if it is "within the range of discretion allowed by the more general policy of the statute." *Id*. While we defer to an agency's interpretation of delegative terms to the extent it is within the range of discretion allowed, an agency's interpretation of nondelegative terms is not entitled to deference. *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014).

"Aid, abet, incite, compel or coerce" are inexact terms. Although they are not defined in the statute and thus are open to various interpretations, they do not require the agency to make a legislative policy determination. *See Blachana, LLC v. BOLI*, 354 Or 676, 687, 318 P3d 735 (2014) (considering a term that "embodies a complete [but imprecise] legislative policy" and is "capable of more than one meaning" inexact). Therefore, we review the agency's interpretation to determine if it is consistent with legislative intent and, in that regard, the agency's interpretation of the statute is not entitled to deference. *Id*.; *Coast Security Mortgage Corp.*, 331 Or at 354.

## III.   STATUTORY CONSTRUCTION

In construing an inexact statutory term, we examine the text and context of the statute and, where relevant, the legislative history. *State v. Gaines*, 346 Or 160, 164, 206 P3d 1042 (2009). We begin by considering how the terms are defined and then consider prior case law, preexisting common law, and comparable statutes.

### A.   *Text*

First, we examine the text. The text provides that it is an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." *Former* ORS 659A.030(1)(g) (2021). Where, as here, there are no relevant statutory definitions,

we look to the text's plain meaning, according to contemporaneous dictionaries, unless the terms at issue are terms of art drawn from a specialized trade or field. *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015); *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014). Where a term is a legal term of art, we use contemporaneous legal dictionaries to determine the intended meaning. *Brown v. GlaxoSmithKline, LLC*, 372 Or 225, 231-32, 548 P3d 817 (2024). The terms at issue, "aid," "abet," "incite," "compel," and "coerce," are terms of common usage that are sometimes used as legal terms of art. As such, we consult both contemporaneous ordinary usage and legal dictionaries to understand the legislature's intended meaning.[2] *Id*.

Addressing the text, BOLI argues that (1) "aid" does not require knowledge of the underlying conduct, (2) to the extent "abet" requires knowledge, constructive knowledge is sufficient, and (3) "incite," "coerce," and "compel" do not require knowledge. Because the definitions of "aid," "incite," "coerce," and "compel" indicate that knowledge of the underlying conduct is required and BOLI does not suggest that petitioner had notice sufficient to constitute constructive knowledge, we disagree.

Definitions from both ordinary and legal dictionaries indicate that a person must be aware of the underlying conduct in order to aid, abet, incite, compel or coerce it.

First, "aid" is defined as "to further the interests or designs of (another) by assistance or cooperation; to give support, help, or succor to; assist." *Webster's New Int'l Dictionary* 53 (unabridged ed 1952). "Aid" is "distinguished from its synonym 'encourage,' the difference being that the former connotes active support and assistance." *Black's Law Dictionary* 91 (4th ed 1951). "Active support and assistance" involves acting with intent, or at least knowledge, of the underlying conduct; indeed, to connote "assistance" without intent or knowledge would usually require the use of a clarifying "modifying adverb, such as 'unintentionally' or 'unwittingly.'" *State v. Morgan*, 361 Or 47, 54–55, 388 P3d 1085 (2017) (determining plain and legal dictionary definition

---

[2] The legislature enacted the provision at issue in 1949. Or Laws 1949, ch 221, § 5. As such, we look to dictionary definitions close in time to 1949.

of "aid" including "help," "support," and "assist" connotes intent to facilitate a particular outcome); *see also Allison v. Dolich*, 321 Or App 721, 726, 518 P3d 591 (2022) ("One who aids or abets [under *former* ORS 659A.030(g) (2021)] is one who assists another to commit an act.").

BOLI contends that comparison of the definitions of "aid" and "abet" support the conclusion that "aid" does not require knowledge. BOLI relies on *Black's Law Dictionary* for the proposition that, "strictly speaking, ['aid'] does not imply guilty knowledge or felonious intent, whereas the word 'abet' includes knowledge of the wrongful purpose and counsel and encouragement in the commission of the crime." *Black's* at 17. Although *Black's* may offer a "strictly speaking" clarification, it also provides that "aid" and "abet" are "nearly synonymous terms as generally used," and they are generally treated interchangeably when used together, as in "aid and abet." *Id*. And when used together, "aid and abet" "[i]mplies knowledge" of underlying unlawful conduct. *Id*. Consideration of the full definition and common usage, both of which support the conclusion that "aiding" someone requires knowledge, indicates that the legislature did not intend the "strictly speaking" definition. *See Gonzalez-Valenzuela*, 358 Or at 461 (explaining that a term's use in a particular context "may dictate applying one definition rather than another, if the dictionary contains multiple definitions for a relevant term").

BOLI further contends that to the extent "abet" requires knowledge, "constructive knowledge" is sufficient. Relying on *Black's*, BOLI argues that the definition of "knowledge" includes constructive knowledge, that is, "[k]nowledge [that] may be imputed, when the means of knowledge exists, [is] known and accessible to the party, and [is] capable of communicating positive information." *Black's* at 1013. However, that definition also refers to "notice or knowledge sufficient to excite attention and put [a] person on guard and call for inquiry." *Id*. at 1012; *see also Cameron v. Edgemont Investment Co.*, 136 Or 385, 397, 299 P 698 (1931) ("[N]otice of acts and circumstances which would put a man of ordinary prudence and intelligence upon inquiry is equivalent in the eyes of the law to knowledge of all the

facts a reasonably diligent inquiry would disclose."). BOLI does not acknowledge the similarities between its interpretation of "constructive knowledge" and typical negligence, but regardless, BOLI has identified nothing in this record that put petitioner on any kind of notice of the violation such that knowledge would be imputed as a function of law. *See Mark v. ODFW*, 191 Or App 563, 576, 84 P3d 155 (2004) ("Constructive knowledge exists when a person is aware of 'information as would lead a prudent man to believe that the fact existed, and that if followed by inquiry must bring knowledge of the fact home to him.'" (Quoting *Tucker v. Constable*, 16 Or 407, 409, 19 P 13 (1888).)).

The definitions of "incite," "compel," and "coerce" similarly connote knowledge. "Incite" means "[t]o move to action; to stir up; to spur or urge on," and the legal definition is "nearly synonymous with 'abet,'" which, as discussed above, explicitly requires knowledge. *Webster's* at 1257; *Black's* at 905. Similarly, the definitions of both "compel" and "coerce" include "to force," "to drive or urge with force," and "to compel to compliance," all of which indicate acting knowingly. *Webster's* at 519, 544; *Black's* at 324, 353.

BOLI contends, however, that the definitions of incite, coerce, and compel do not require knowledge of the underlying conduct because they do not "suggest[]" or "mention" knowledge. However, definitions can connote a mental state without explicitly providing one, and, as noted, we disagree that the definitions do not suggest that knowledge was required. *See Morgan*, 361 Or at 55 (explaining that words used in definitions can imply, and therefore require, a mental state without explicitly including one).

B. *Context*

That interpretation—that knowledge is required to aid another to commit sex discrimination under ORS 659A.030—is consistent with prior case law, preexisting common law, and other statutory context.

1. *Preexisting common law*

Preexisting common law can provide helpful clues as to what the legislature intended, *see Gonzalez-Valenzuela*,

358 Or at 469 (including "preexisting common law" among context useful in discerning legislative intent), and we have recently discussed the common law requirements to impose tort liability for aiding and abetting. To determine the "minimum standard that, as a matter of Oregon common law, an aiding and abetting claim must meet," we have relied on the three theories of liability contained in the *Restatement (Second) of Torts*. *Riveria v. Perlo Construction, LLC*, 336 Or App 307, 322-24, 561 P3d 1144 (2024) (evaluating the pleading requirements for a violation of *former* ORS 659A.030(1) (g) (2021)).

Those theories allow for liability for assisting another's tortious conduct in three ways: (a) a person "does a tortious act in concert with the other or pursuant to a common design with him," (b) a person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself," or (c) a person "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Restatement (Second) of Torts* § 876 (1979); *see Riveria*, 336 Or App at 322 ("[S]ection 876 of *Restatement (Second) of Torts* (1979) reflects Oregon common law.").

As BOLI does not contend, nor did BOLI find, that petitioner acted in concert with another or separately breached a duty to AP2, the second theory of liability in the *Restatement* is the most analogous. And that theory explicitly requires that the aider or abettor be aware of the underlying tortious conduct in order to aid and abet its commission.

Contrary to BOLI's contentions,[3] a comparison to tort common law is appropriate here. Indeed, discrimination cases under ORS Chapter 659A have been compared to and analyzed under tort law in other contexts. *See Griffin v. Tri-Met*, 318 Or 500, 506-07, 870 P2d 808 (1994) (explaining that

---

[3] At oral argument, BOLI contended that the *Restatement* cannot reflect the intent of the legislature that enacted ORS 659A.030 because it post-dates the statute's enactment. However, *Restatement* section 876 reflects long-held Oregon common law principles. *Granewich v. Harding*, 329 Or 47, 54, 985 P2d 788 (1999) (observing that each of the three theories in section 876 "already is reflected in existing Oregon case law governing the liability of persons acting in concert" and adopting that section "breaks no new ground").

the statutory duty of an employer not to discriminate under ORS 659A is a legal duty, the breach of which fits within the statutory definition of a tort under the Oregon Tort Claims Act); *see also Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 74, 652 P3d 852 (1982) (including racial discrimination among types of intentional torts). And common law tort aider-and-abettor liability is consistent with the conclusion that the legislature intended to require awareness of the underlying conduct.

## 2. *Criminal statutes*

Finally, BOLI supports its argument through reference to criminal statutes. BOLI argues that because the catch-all criminal aid-and-abet statute includes an express element of a heightened mental statement, the absence of an express heightened mental state in the employment discrimination statute suggests that the legislature intended not to require one. *See* ORS 161.155 (requiring a separate element of "intent to promote or facilitate the commission of the crime"). Assuming *arguendo* that separately enacted criminal statutes could be considered context,[4] in contrast to BOLI's contention, the legislature *has* required a heightened mental state for criminal accomplice liability without expressly providing for one. Assault in the third degree and robbery in the second degree both include provisions allowing for liability if the actor is "aided by another person actually present," which has been construed to mean that the aider is liable for assault or robbery if they acted with the *intent* to bring about the underlying conduct. *Morgan*, 361 Or at 57; *see State v. Phillips*, 354 Or 598, 610, 317 P3d 236 (2012) (looking to criminal common-law context to determine that the term "aided" required intent). In reaching that conclusion, the court rejected the argument that the legislature's explicit inclusion of a mental state in another accomplice liability statute meant that the legislature did not intend a heightened mental state where it did not include one. *Morgan*, 361 Or at 56.

---

[4] A statute's context can, in some situations, include other statues on the same subject. *State v. Cortes*, 374 Or 461, 472, 580 P3d 839 (2025); *see also* Hon. Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 640 (2019) (observing "that there is no bright line between related statutes that may be referred to as 'context' and unrelated statutes that may not").

In sum, use of the terms in similar tort common law and criminal statutory contexts indicates that the legislature intended to require at least knowing assistance to establish aider-and-abettor liability under *former* ORS 659A.030(1)(g) (2021). In light of that text and context,[5] we determine that the legislature intended to require knowledge for liability under *former* ORS 659A.030(g) (2021).[6]

## IV.   APPLICATION

We next apply that standard to the facts in this case. The record does not support, nor does BOLI argue, that petitioner knowingly aided and abetted sexual harassment. In BOLI's original final order, BOLI found that "[t]here is no evidence that the individual Respondents actively 'help[ed]' or 'assist[ed]' in the sexual harassment of AP2" and that petitioner "did not see AP2 dance or witness her being present on Frehoo's premises." In BOLI's amended final order, BOLI found that petitioner's testimony that he was not involved in AP2's hiring and that he had never seen her before was credible. Further, petitioner took action to address the harassment as soon as he learned of it. *Cf. Harris v. Pameco Corp.*, 170 Or App 164, 177-78,12 P3d 524 (2000) (an employer who has knowledge of harassing behavior and takes immediate remedial action is not liable under ORS 659A.030).

BOLI instead relied on petitioner's "significant experience in the adult entertainment industry" and that

---

[5] The parties do not provide any legislative history, and the legislative history we reviewed does not clearly address the legislature's intention regarding mental state.

[6] Because the underlying violation—creation of a hostile work environment by an employer—requires only that the employer "should have known" of the harassment, BOLI argues that more should not be required to find aid-and-abet liability for the creation of a hostile work environment. *See H. K. v. Spine Surgery Center of Eugene*, 305 Or App 606, 614, 470 P3d 403 (2020), *rev den*, 367 Or 826 (2021) (distinguishing negligence standard for vicarious liability of employer, requiring that the employer knew or should have known of the harassment, from standard for direct liability, which does not). However, generally, in this context, the mental state of the aider and abettor, not the underlying actor, is what matters. *Olsen v. Deschutes County*, 204 Or App 7, 26, 127 P3d 655, *rev den*, 341 Or 80 (2006) (section 876 knowledge requirement for aider-and-abettor liability "applies whether or not [the underlying tortfeasor] knows his act is tortious" (internal quotation marks omitted)); *see also Moore v. Portland Public Schools*, 328 Or App 391, 405, 537 P3d 544 (2023) (allowing for liability for aiding and assisting intentional tort of battery based on defendant's "knowledge that tortious conduct would occur").

"[h]e was involved in developing policies for Frehoo," even though "[h]e delegated the supervision of Frehoo's daily operations \*\*\*." BOLI determined that petitioner's responsibility for ensuring Frehoo's policies were conveyed to staff and enforced and his failure to act to ensure enforcement established liability. However, petitioner's responsibility is not sufficient to impose liability under *former* ORS 659A.030(g) (2021). From that record, there is not substantial evidence to support that petitioner aided and abetted sexual harassment.

Reversed and remanded.