Argued and submitted October 28, reversed December 3, 2008

## Heather D. EDWARDS,
*Petitioner-Respondent,*

*v.*

## Leonard J. LOSTROM,
*Respondent-Appellant.*

Lane County Circuit Court
180707150; A135861

197 P3d 1128

James C. Jagger argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

■    Respondent appeals a stalking protective order prohibiting him from contacting his granddaughter. He challenges the legal sufficiency of the evidence adduced at the hearing in support of the issuance of the order. On *de novo* review, *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we conclude that the evidence was legally insufficient and reverse.

Petitioner Edwards filed a petition for a stalking protective order on behalf of her 14-year-old daughter, T. She asked that respondent, T's paternal grandfather, be prohibited from contacting T. The request was based on three instances that T reported to petitioner in which T saw her grandfather drive by in a car.

At the hearing, T testified as to the nature of those contacts and the fear that the contacts caused her to experience. According to T, any contact with her grandfather caused her anxiety because a friend had heard through "the grapevine" that T's grandparents were trying to "take me home and keep me in their custody in their house, and teach me the true ways of life." T said that she feared that "[her grandparents] were going to take me. I was told that I would be locked in their house. I would have no contact with any other people [and that] put me in a huge fear." T could not identify the source of that information, only that a friend had told her that she had heard information to that effect in a phone call with an unidentified person.

T explained that three contacts with her grandfather put her in fear. The first contact occurred in March 2007 and consisted of an incident in which T was inside a friend's house and happened to see respondent drive by with one of his coworkers, Josh, in the front passenger seat. She said that she thought that her grandfather was "looking at the house."

The second contact occurred on April 3, 2007, and was an incident in which T stepped off a transit bus and began walking towards a friend's house in Eugene when she saw respondent in his truck, stopped at a red light. She did not notice whether respondent had seen her. She ran away and hid between two buildings.

The third contact occurred on an unspecified date when T was walking to school. She again saw her grandfather's truck, with Josh in the passenger seat. Once again, she did not see whether respondent or Josh was looking at her. She ran to the school building.

Respondent testified at the hearing. He said that he does not know where T lives and that he has not known her location for a number of months. He said that his employment as a home heating and air conditioning installation, service, and repair worker requires him to make house calls throughout the Eugene area. He said that he was not aware of any occasion in which he drove close to where his granddaughter was located. He further testified that, on April 3, 2007, he was working in another city from 7:30 a.m. to 4:00 p.m., and he introduced without objection an employee time card stating that he had worked during those hours for a contractor in Veneta.

The trial court granted the petition for a stalking protective order. The court found that respondent did not act intentionally, but that he did act knowingly and recklessly in placing his granddaughter in fear.

On appeal, respondent contends that the evidence is legally insufficient to support the issuance of a stalking protective order. Specifically, he contends that the evidence is insufficient to establish that he acted with the requisite intent in coming into contact with T and, moreover, that the evidence is insufficient to establish that T was reasonably in fear of such contacts.

ORS 30.866(1) provides that a court may issue a stalking protective order under the following circumstances:

"(a)  The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)  It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)  The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal

safety of the victim or a member of the victim's immediate family or household."

"Contact" is defined, in part, as including "[c]oming into the visual or physical presence of the other person." ORS 163.730(3). In this case, there is no question that respondent came into "contact" with his granddaughter within the meaning of the statute. The initial question is whether it has been shown that he did so with the required mental state.

■     As we have noted, the trial court found that respondent acted not intentionally, but knowingly and recklessly. That requires proof

> "that a defendant be aware of and then consciously disregard a substantial and unjustifiable risk that he or she is engaging in repeated and unwanted contact with that person, and the risk must be of such a degree that a reasonable person would not have disregarded it. Stated differently, at a minimum * * *, a defendant subjectively must be aware of a substantial and unjustifiable risk that the contacts in question are repeated and unwanted by the recipient, and then consciously and unreasonably disregard that risk."

*Delgado v. Souders*, 334 Or 122, 133, 46 P3d 729 (2002).

In this case, petitioner did not demonstrate the required mental state. There was no evidence that petitioner or anyone else told respondent that contact with his granddaughter was unwelcome. There was no evidence that respondent actually knew that contact with T was unwelcome. At best, there was testimony that respondent did not know where his granddaughter was residing, and it is perhaps inferable from that testimony that petitioner did not want respondent to have contact with T. But, even assuming that to be the case, there is an absence of evidence that respondent was aware of, and consciously disregarded, a risk that his conduct would result in the unwanted contact.

The first of the three contacts involved respondent driving by a friend's house where T happened to be located. There is no evidence that respondent knew, or had any reason to know, that she was located there at that time. The second of the contacts occurred when T saw her grandfather in

his truck at a stop light; she did not know whether respondent even saw her. Similarly, the third contact occurred when T saw her grandfather driving close to her school; she again did not know whether he even saw her. It may be argued that the fact that respondent was seen so close to T on three different occasions provides a basis for an inference that the contact was not accidental. There was, however, unrebutted evidence that respondent made house calls throughout the area with his coworker during that time.

Given that we conclude that the evidence was insufficient to prove the requisite mental state, we do not need to address whether the evidence—based on what T heard from a friend who, in turn, reported what she had heard from an unidentified third person—was sufficient to establish that T was reasonably in fear as a result of the contacts with her grandfather.

Reversed.