Argued and submitted February 28; stalking conviction reversed, remanded for resentencing, otherwise affirmed July 29, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JORDAN JUSTICE ODNEAL,
*Defendant-Appellant.*

Clackamas County Circuit Court
18CR21768; A168341

469 P3d 857

Defendant appeals a judgment of conviction for one count of stalking, ORS 163.732, and one count of second-degree criminal mischief, ORS 164.354. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal with respect to the stalking count. In particular, defendant argues that there was not a second actionable contact between defendant and the alleged victim to support his conviction for stalking. *Held*: The trial court erred in denying defendant's motion for a judgment of acquittal. The state did not present legally sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that defendant was aware that his conduct would result in a second contact with the alleged victim.

Stalking conviction reversed; remanded for resentencing; otherwise affirmed.

Katherine E. Weber, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen R. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Stalking conviction reversed; remanded for resentencing; otherwise affirmed.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for one count of stalking, ORS 163.732, and one count of second-degree criminal mischief, ORS 164.354. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal with respect to the stalking count. As explained further below, defendant contends that the state failed to establish "repeated actionable contacts" between defendant and the alleged victim, K. In particular, defendant argues that there was not a second "actionable contact" to support his conviction. For the reasons that follow, we agree with defendant and reverse his stalking conviction.[1]

"We review the denial of a motion for a judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020) (internal quotation marks and brackets omitted). We state the facts in accordance with that standard.

When K was 17 years old, K and her family moved into an apartment in an apartment complex located at the corner of Monterey Avenue and Fuller Road in Milwaukie, Oregon. Fuller Road is to the west of the apartment complex, Monterey Avenue is to the south, and Causey Avenue is to the north. The only driveway into and out of the apartment complex is on Fuller Road.

Around the same time that K and her family moved into the apartment, K met defendant, who was then 18 years

---

[1] In a second assignment of error, defendant contends that the trial court erred when it found defendant guilty of stalking. Our resolution of defendant's first assignment of error obviates the need to separately address defendant's second assignment of error because, as defendant acknowledges in his briefing, they present essentially the same legal question. *See State v. Morgan*, 361 Or 47, 51-52, 388 P3d 1085 (2017) (reasoning that, in a bench trial, a challenge to the sufficiency of evidence made in closing argument is considered "the functional equivalent of a motion for judgment of acquittal").

In a third assignment of error, defendant contends that the trial court erred with respect to both offenses in sustaining the state's hearsay objection to certain evidence. We reject that assignment of error without further discussion.

old, on Snapchat (a smartphone application). Defendant lived in an apartment on Causey Avenue, a few blocks east of K's family's apartment. After K and defendant met on Snapchat, they met in person, and defendant helped K and her family finish moving K's family's belongings into K's family's apartment.

Shortly thereafter, following certain conduct undertaken by defendant—a description of which is not necessary to our analysis in this opinion—K texted defendant that she wanted to end their friendship. K's mother also texted defendant and told him to leave K alone. Notwithstanding those communications, defendant repeatedly texted K. K's brother, who was a few years older than defendant, went to defendant's apartment and told defendant to stop harassing K, stop texting and calling K, and leave K alone.[2]

Approximately one month after K's brother went to defendant's apartment, one night, when it was dark outside, K and her sister were in the kitchen of their family's apartment. K's sister looked out of the kitchen window and saw defendant in the apartment complex parking lot shining a flashlight into the apartment's kitchen window. K also saw defendant in the parking lot and watched him start to walk away, out of the driveway of the apartment complex and to Fuller Road.

K and her sister, brother, and mother then left the apartment and saw defendant on Fuller Road walking towards Causey Avenue, away from the apartment complex. At some point while K and her family were watching defendant walk away on Fuller Road, defendant looked back toward Monterey Avenue. K's brother told K, his mother, and his sister to go back inside, and they returned to the apartment.

---

[2] Approximately two weeks before K's brother went to defendant's apartment, someone delivered a letter written by defendant to K's family's apartment. The letter was addressed to K's mother and asked K's mother to let defendant continue to be friends with K. In the trial court, the state argued that delivery of the letter constituted a "contact" for purposes of the criminal stalking statute, ORS 163.732, because it showed that defendant personally came to K family's apartment to drop the letter off. On appeal, the state concedes, and we agree that, in the circumstances of this case, a person delivering the letter to K's home did not qualify as a predicate contact under the criminal stalking statute.

K's brother then took his father's truck and drove around looking for defendant. While K's brother was driving around looking for defendant, K, her sister, and her sister's boyfriend left K's family's apartment, and went to the apartment complex parking lot, bringing with them the family's three dogs.

K's brother drove toward defendant's apartment to see if that was the location to which defendant was walking. After K's brother was unable to locate defendant near defendant's apartment, he drove back toward K's family's apartment and, while driving on Monterey Avenue toward Fuller Road, saw defendant near the apartment complex. Defendant was walking on Monterey Avenue toward Fuller Road.

As K's brother neared defendant in the truck, K's brother slowed down, "raised [his] voice," and told defendant to leave K alone, and that defendant "shouldn't be over there." Defendant then told K's brother that defendant was going to call the sheriff, and K's brother told defendant to do so. K's brother next stopped the truck, got out of it, and yelled at defendant. Defendant ran away from K's brother toward Fuller Road.

During K's brother's confrontation with defendant on Monterey Avenue, K, who, as described above, was then in the apartment complex parking lot, heard the truck, turned toward that sound, and saw defendant's head over a fence that separated the apartment complex from Monetary Avenue. K saw that defendant was moving toward Fuller Road and, while accompanied by her sister and her sister's boyfriend, ran toward Fuller Road. K stopped on the sidewalk on Fuller Road at the apartment complex driveway.

When defendant reached the corner of Monterey Avenue and Fuller Road, he took a right, so that he was running toward Causey Avenue—a route that passed by the driveway to K's apartment complex. K's brother got back into the truck and followed defendant, stopping the truck before reaching the apartment complex driveway. K's brother got out of the truck and again yelled at defendant, telling him that he "should know better than * * * to keep coming around my family and coming around my house."

Defendant then yelled to K's brother to "get down on the ground," threw his flashlight at the truck, and continued running toward Causey Avenue. As defendant ran on the sidewalk toward Causey Avenue—which was toward K and away from K's brother—K grabbed defendant and pulled him to the ground. During defendant's trial, K testified that she "attacked" defendant because he was running toward her and she did not know what he was going to do.

Defendant managed to get away from K and continued running away toward Causey Avenue. The family then called the police, who located defendant a few blocks away on Causey Avenue.

For his conduct, defendant was charged with one count of stalking, ORS 163.732, and one count of second-degree criminal mischief, ORS 164.354. After the close of the state's case-in-chief, defendant moved for a judgment of acquittal. With respect to the stalking count, defendant argued, among other points, that even if the trial court found that defendant shining the flashlight into K's family's kitchen window was an "unwanted contact that create[d] a reasonable apprehension regarding the personal safety of [K,] *** there's no second episode that would amount to an act of stalking or an unwanted contact." The state, for its part, argued that shining the flashlight into K's kitchen window was an unwanted contact and that defendant "coming back around to the area of [K's] apartment" was also an unwanted contact. The trial court denied defendant's motion for a judgment of acquittal, and this appeal followed.

The essential elements of the crime of stalking are set out in ORS 163.732, which provides, in part:

"(1)   A person commits the crime of stalking if:

"(a)   The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Thus, under the statute, "A person may be convicted of stalking when that person knowingly alarms or coerces another person by making repeated and unwanted contacts with that person." *State v. Shields*, 184 Or App 505, 510, 56 P3d 937 (2002), *rev den*, 335 Or 355 (2003); *see also State v. Rangel*, 328 Or 294, 302, 977 P2d 379 (1999) ("The gist of the crime of stalking is knowingly alarming or coercing another through repeated and unwanted 'contacts.'"). "Knowingly," as used in ORS 163.732, means that "a person acts with an awareness that his or her conduct is of a nature so described or that a circumstance so described exists." *Id.* at 304 (citing ORS 161.085(8)). The criminal stalking statute "uses 'knowingly' with reference to the conscious inducement of an actual effect—fear—by creating a perception of danger in the victim through multiple unwanted contacts." *Id.* at 304-05.

"Repeated," as used in ORS 163.732(1)(a), means "two or more times." ORS 163.730(7). A contact may consist of, among other things, "coming into the visual or physical presence of the other person." ORS 163.730(3)(a); *see also King v. W. T. F.*, 276 Or App 533, 538, 369 P3d 1181 (2016) ("The term contact includes almost any interaction * * *." (Internal quotation marks omitted.)). "Additionally, the state must prove that the victim was in fact alarmed or coerced as a result of the repeated and unwanted contacts and that the victim's apprehension about personal safety was objectively reasonable." *Shields*, 184 Or App at 510.

On appeal, defendant concedes that "shining a flashlight into K's apartment window constituted a 'contact' for purposes of the stalking statute," but contends there was no second "actionable contact" as required to support his conviction for stalking. Defendant argues that the state failed to prove that defendant "knowingly" made a second contact with K by coming back into her physical presence while defendant was being pursued by K's brother, because the state failed to present evidence that defendant's "coming

upon K was anything other than incidental to his flight from" K's brother. In defendant's view, the state did not introduce "any evidence to suggest that defendant was running toward the Fuller Road apartments for the purpose of making contact with [K]" or that defendant had "any knowledge that [K] was outside and capable of seeing him."

The state, for its part, argues that a reasonable trier of fact could have determined that "defendant's act of running toward [K's] apartment during his altercation with [K's brother]—rather than running toward his own apartment—constituted knowingly coming into the victim's visual presence and, thus, was a 'contact.'" In the state's view, a reasonable trier of fact could have inferred that defendant knowingly came into the victim's visual presence, because "defendant had, in fact, just been seen by [K] through [K's] apartment's window, and defendant was running back toward that location." The state further contends that a reasonable trier of fact could have determined that "defendant knew he would be capable of being seen by [K] when he ran back toward her apartment"—regardless of whether K was inside or outside of her apartment—because "defendant had just had been in [K's] visual presence and, after the altercation with [K's brother], he ran back toward that same location."

In this case, we conclude that the state did not present legally sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that defendant knowingly alarmed or coerced K by making a contact with her during defendant's interactions with K's brother on Montgomery Avenue and Fuller Road, or defendant's flight therefrom and, thus, there was not a second contact to support defendant's conviction. Although defendant did "come into the visual *** presence" of K when he was on Monterey Avenue and after he turned onto Fuller Road and was fleeing from K's brother, ORS 163.730(3)(a), *see State v. Maxwell*, 165 Or App 467, 474, 998 P2d 680 (2000), *rev den*, 334 Or 632 (2002) (defining the phrase "visual presence" as "capable of being seen"), the record does not contain evidence from which a rational trier of fact could have inferred, beyond a reasonable doubt, (1) that defendant was aware that, when he was on Monterey Avenue, K would be in the parking lot

of her apartment complex and capable of seeing him from where she was standing in the parking lot or (2) that defendant was aware that, when defendant was being pursued by K's brother, K would be on Fuller Road and see defendant running toward her. *See Edwards v. Lostrom*, 224 Or App 253, 257-58, 197 P3d 1128 (2008) (under civil stalking statute, ORS 30.866(1), the evidence was not sufficient to prove that the respondent acted with the requisite "intentional," "knowing," or "reckless" mental state by driving by a house where the petitioner was, when there was "no evidence that respondent knew, or had any reason to know, that [petitioner] was located there at that time"). In the absence of evidence that would support such inferences, a rational trier of fact could not have found, beyond a reasonable doubt, that defendant was aware that his conduct would cause him to come into contact with K or create a perception of danger in K.

It is true that the state may prove "a defendant's knowledge with circumstantial evidence and reasonable inferences flowing from that evidence." *State v. Bell*, 220 Or App 266, 270, 185 P3d 541 (2008). But an inferred fact "must be one that a rational factfinder can be convinced follows beyond a reasonable doubt from the underlying facts." *Id.*; *see also State v. Bivins*, 191 Or App 460, 467-68, 83 P3d 379 (2004) (evidence is insufficient to support an inference when it "requires too great an inferential leap—that is, when the logic is too strained" or when it "requires the stacking of inferences to the point of speculation" (internal quotation marks omitted)). As noted above, in this case, the state argues that a rational factfinder could infer that defendant "knowingly" came into K's visual presence because (1) K was capable of seeing defendant when she was in her family's apartment and defendant was in the apartment complex parking lot and (2) defendant ran back toward that location. The difficulty with that argument is that the "facts" that the state points to do not allow for an inference that defendant was aware that he was within K's visual presence when he was on Monterey Avenue or that he would come within K's visual presence when he turned onto Fuller Road.

Because a rational trier of fact could not have found, beyond a reasonable doubt, that defendant knowingly alarmed

or coerced K by engaging in repeated and unwanted contact, the trial court erred in denying defendant's motion for a judgment of acquittal with respect to the stalking count.[3]

　　　　Stalking conviction reversed; remanded for resentencing; otherwise affirmed.

---

[3] Defendant also contends that, even if the state proved repeated "actionable contacts," the state failed to prove that those contacts each caused K subjective alarm. Because we conclude that a rational trier of fact could not have found, beyond a reasonable doubt, that defendant knowingly alarmed or coerced K by engaging in repeated and unwanted contact, we do not address defendant's argument regarding proof of K's subjective alarm.