No. 236 April 1, 2026 93

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SETH THOMAS HOLBROOK,
*Defendant-Appellant.*

Yamhill County Circuit Court
22CR37521, 23CN00241; A181146 (Control), A181148

Ladd J. Wiles, Judge.

Argued and submitted February 12, 2025.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Elise Josephson, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

Shorr, P. J., concurring.

**PAGÁN, J.**

Defendant appeals from a judgment of conviction for stalking, ORS 163.732, and second-degree trespass, ORS 164.245.[1] In his sole assignment of error, defendant asserts that the trial court erred when it denied a motion for a judgment of acquittal (MJOA) on the stalking charge. The stalking charge arose from three incidents in which defendant came to his ex-wife D's home. Defendant argues that the incidents, while problematic, could not have made D reasonably apprehensive for her safety. We conclude that, based on evidence of the nature of the incidents, D's clearly expressed desire for no contact, and defendant's behavior, a reasonable juror could have found defendant guilty beyond a reasonable doubt. We thus affirm.

A judgment of acquittal is required if the evidence is insufficient to support a verdict. *State v. Cunningham*, 320 Or 47, 61-62, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995); *State v. Newkirk*, 319 Or App 131, 133, 509 P3d 757, *rev den*, 370 Or 214 (2022). We review questions of the sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *Cunningham*, 320 Or at 63. This court's decision is not whether we believe that defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for the factfinder to so find. *Id*.

In 2022, defendant and D had been divorced for several years. They had two children together, ages four and nine, with whom defendant had visitation rights. A condition of their divorce was that all communication between them was to be by email. The parties had not seen each other, except at a distance at a visitation center, since the divorce. On July 27, 2022, defendant showed up unannounced at D's house and knocked on the door. D came out of her home and

---

[1] This case was consolidated on appeal with a judgment in Case No. 23CN00241 finding defendant in contempt on two counts of contempt of court, ORS 33.015, for contacting the victim despite a no-contact order. Because defendant does not challenge the findings of contempt, we affirm the judgment in that case.

had a "civil conversation" with defendant and pet his dogs, who were in his van. The children saw that defendant was there and asked if he could see their rooms. D obliged and defendant was in the home for about 45 minutes with the children. Afterwards, D told defendant that he should not be there and that further contact needed to be via email.

A week later, on August 3, defendant showed up again unannounced. D opened the door and talked with defendant. This time, defendant had a bouquet of roses and was repeating "I love you." Defendant told D "[y]ou're my wife. You belong to me." D replied "[t]hat's not where we're at all. And I have a choice too. Now, we're divorced. That was in the past. You need to go." Defendant was also muttering under his breath. Defendant hugged his son, who was standing with D. D repeatedly told defendant to leave. Defendant twice reached out to touch D. The second time, he leaned towards her in what she thought might have been an attempt to kiss her. D then pushed past defendant with her son and requested that defendant move his van out of the way of her car. She told her son they were going to the Lego store, drove off, and called police. Police arrived and found defendant nearby and told him that he had to leave.

That afternoon, after D had returned home, defendant again arrived at her house, parking his van such that it blocked her car from leaving. He again knocked at her door. D did not open it. Defendant then began walking back and forth between his van and the door, pounding on the door each time. D called police. Police arrived and made it clear to defendant that he had been trespassed and was not allowed on the property. Defendant acknowledged as much, but then walked back to his van, opened the door, and took out the bouquet of roses. D was watching from a second-floor window. Defendant then, in the presence of several officers, approached the door and left the bouquet of roses on a bench. At that point, police arrested him. D saw the entire incident. Defendant made a series of nonsensical statements after his arrest, and officers otherwise noted that his demeanor was peculiar both in the morning and afternoon.

Defendant was charged with Count 1, stalking, under ORS 163.732, and Count 2, second-degree trespass,

under ORS 164.245. The case was tried to a jury. Defendant moved for an MJOA on Count 1. The trial court denied defendant's motion. The jury found defendant guilty, and the trial court sentenced him to 24 months of supervised probation and three days in jail.

D filed for a stalking protective order (SPO) based on the same incidents as in the criminal case, which was denied. We affirmed the denial of the SPO in *D. R. H. v. Holbrook*, 341 Or App 299, 301 (2025) (nonprecedential memorandum opinion). That outcome is not binding or persuasive here, however, because we affirmed the denial of the SPO on the deferential grounds that the trial court there did not find D's testimony to be credible and D thus failed to meet her burden of proof in the context of that proceeding. *Id.* The jury in this case was free to find D credible, and, based on its verdict, it apparently did so. The question before us is thus whether a reasonable juror could have found defendant guilty based on the evidence. *Cunningham*, 320 Or at 63.

The criminal stalking statute, ORS 163.732, provides that:

"(1) A person commits the crime of stalking if:

"(a) The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b) It is *objectively reasonable* for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim *reasonable apprehension* regarding the personal safety of the victim or a member of the victim's immediate family or household."

(Emphases added). "Repeated" means two or more times. ORS 163.730(9). "Alarm" means "to cause apprehension or fear resulting from the perception of danger." ORS 163.730(1). "Danger" means "a threat of physical injury, not merely a threat of annoyance or harassment." *S. A. B. v. Roach*, 249 Or App 579, 586, 277 P3d 628 (2012) (citing *K. R. v. Erazo*, 248 Or App 700, 707, 274 P3d 214 (2012)). "The statute thus

requires an objectively reasonable fear of a threat of physical injury." *J. C. R. v. McNulty*, 304 Or App 286, 292, 467 P3d 48 (2020).

Defendant's challenge rests on ORS 163.732(b) and (c). He argues that no reasonable juror could have found that any of the three incidents would have made an objectively reasonable person in the same situation fear for their safety. He further contends that in the July 27 incident, and in the morning incident of August 3, no rational juror could have found that D was subjectively or objectively alarmed.

We agree with defendant that the June 27 incident could not have been a qualifying contact because no reasonable juror could find that D had a reasonable apprehension for her or her children's safety, or that it was objectively reasonable to have been alarmed. *See S. A. B.*, 249 Or App at 586 (mere annoyance is insufficient to prove danger). The visit was cordial, D played with defendant's dogs, D let defendant into the house to play with the children, and otherwise manifested that she was not worried—even if she may have doubted defendant's motives. But D's admonition at the end of the visit that future contact needed to be via email was an expression that it was a one-time event.

Given that D had expressed that future contact was to be via email only, as mandated by the terms of their divorce, defendant's appearance on the morning of August 3 was thus without D's approval or consent. D made clear that defendant was not welcome. Defendant ignored her rejection and instead escalated his conduct. He persisted in making contact, would not leave despite repeated requests to do so, and then touched and tried to kiss D. Given that defendant was muttering to himself, and otherwise exhibiting signs that he might be mentally unwell (such as giving the officers a "thousand-yard stare"), combined with the touching and his attempt to kiss D, a juror could find that it was objectively reasonable for D to be alarmed. Further, D's call to police, her impromptu trip with her son, and testimony about her mental state, was sufficient to find that she was subjectively and objectively apprehensive for her safety. *See K. R.,* 248 Or App at 705 (laying out subjective and objective apprehension). Thus, a reasonable juror could have found

that the incident on the morning of August 3 was a qualifying contact.

As to the afternoon incident, defendant's behavior despite the presence of police is crucial. When a person ignores negative personal consequences—in this case, the risk of arrest—to persist in making contact, that goes to the objective reasonableness of alarm. *See M. C. H. v. Milligan*, 208 Or App 229, 240, 145 P3d 180 (2006) (alarm was objectively reasonable when mail carrier was willing to harass woman on his route despite potential employment consequences). Here, defendant pounded on the door repeatedly, and D called police. When the police arrived, they told defendant that he had been trespassed and that he had to leave. Despite the presence of the officers and their commands, defendant doubled back to his van, grabbed a bouquet, went up to the door, and dropped the bouquet. While a bouquet is not itself a dangerous or threatening object, the circumstances of its delivery could have alarmed an objectively reasonable person.

Even though defendant and D did not meet face to face, it was reasonable that D would have been reasonably apprehensive for her safety when she saw that defendant was in her driveway continuing to behave peculiarly (as indicated by his indecisive and repetitive movements and his nonsensical statements), had blocked D's car so she could not leave, and openly defied the commands of armed law enforcement in attempting to make contact. *See C. P. v. Mittelbach*, 304 Or App 569, 579, 468 P3d 496 (2020) (reasonable apprehension existed where conduct continued despite police warnings and presence). The jury could have found that an objectively reasonable person in D's position would have feared for their safety or that of their children. Thus, a reasonable juror could have found that the afternoon incident was a qualifying contact.

Because a reasonable juror could have found that both the morning and afternoon incidents on August 3 were qualifying contacts, sufficient to meet the two-contact minimum under ORS 163.730(9), the trial court did not err by denying defendant's MJOA.

Affirmed.

**SHORR, P. J.,** concurring.

I concur in the majority's decision to affirm the trial court's judgment. I agree with nearly all of the majority's analysis. The majority correctly recites the elements of a stalking crime under ORS 163.732, and I do not repeat all of those elements here. As noted by the majority, the key issue before us boils down to whether there was sufficient evidence for the trial court to conclude that a reasonable factfinder could find beyond a reasonable doubt based on the evidence that D was objectively "alarmed"—meaning she had an "objectively reasonable fear of a threat of physical injury"— and had a "reasonable apprehension regarding [her] personal safety" or that of her family. 348 Or App at 96-97 (citing ORS 163.732(1)(b) and (c)); *see also State v. Odneal*, 305 Or App 635, 640, 469 P3d 857 (2020) (observing that the state must prove that the victim's apprehension about personal safety was objectively reasonable). Because ORS 163.732 requires proof of "repeated" contacts, the contacts must have at least twice given rise to an objectively reasonable fear of a threat of physical injury and a reasonable apprehension regarding personal or family safety. *See also* ORS 163.730(9) (defining repeated as "two or more times").

I write separately only because I disagree regarding the point at which D had an objectively reasonable fear of a threat of physical injury and a reasonable apprehension regarding safety with respect to the *second* qualifying contact, which occurred on the afternoon of August 3. The majority concludes that D had an objectively reasonable fear and a reasonable apprehension of those elements based, in significant part, on when defendant was outside D's home, covered by several police officers, and attempted to deliver a bouquet of flowers to her door despite police instructions not to do so. At that point, the record shows that D was safely inside her home, was watching the interaction from a window, and had no contact with defendant, who, as noted, was covered by at least three police officers. I do not think it would be objectively reasonable for her to fear for her or her family's safety at that point.

However, I agree that D would have an objectively reasonable fear and reasonable apprehension about her and

her family's safety when defendant first reapproached D's home on the afternoon of August 3 and repeatedly pounded on the door before the police arrived. Earlier that morning, both D and, significantly, the police had already warned defendant to stay away from D's home because D did not want him there. In the context of defendant's earlier behavior, his controlling statements, his unwanted physical intrusion into D's home and space on the morning of August 3, which I agree establish the first qualifying contact under the stalking statute, and the particular instructions from D and the police to stay away, there was sufficient evidence for the trial court to conclude that defendant's aggressive return to the home just hours later that afternoon would cause D to objectively fear physical injury and have a reasonable apprehension of fear for her and her family's safety.

Accordingly, I respectfully concur.